### SUCCESSION OF JOHN O'KEEFE—On rule taken by G. McCRYSTAL, Executor, *v.* C. DELACROIX.

The purchaser of property at a succession sale delivered to the notary who was to prepare the act of sale and mortgage the cash instalment of the price, and also left with him the notes that were to be given in compliance with the terms of the adjudication. The executor of the estate afterwards asked the notary to give him $50 of the money on account to pay a bill, which the notary did. The notary afterwards absconded with the balance of the money. *Held:* that the loss should be borne by the purchaser.

In order to make a valid tender the money must be placed in the power of the adverse party. If paid into court, it must be with the intention on the part of the debtor that the creditor shall be at liberty to take it out of court. If deposited with the notary, as the agent of both parties, it must be with the consent that the creditor shall be at liberty to withdraw it if he sees fit, otherwise the money is at the risk of the debtor.

The money and notes could only have been placed at the risk of the succession or executor by a formal putting in default, or by a deposit for the benefit of the succession with the express or implied consent of the executor.

APPEAL from the Second District Court of New Orleans, *Morgan*, J.
*A. McCarthy & T. W. Collins*, for the executor and appellant. *A. Robert*, for defendant.

MERRICK, C. J. Two lots of ground in the city of New Orleans were sold at a probate sale of property of the succession of *John O'Keefe*, deceased, on the 30th of December, 1854, to the defendant in the rule, for the sum of $1450, one third cash and the residue on a credit of six, twelve and eighteen months, for which notes were to be given bearing six per cent. interest until their maturity and eight per cent. thereafter, and to be secured by mortgage upon the property sold.

The purchaser delivered to the notary who was to prepare the act of mortgage and sale the instalment of cash on deposit; and, it seems, also left with him the notes.

After the money had been paid to *Monaghan*, the Notary Public, *McCrystal* asked him (*Monaghan*) to give him $50 dollars on account, for the purpose of enabling him to pay a bill, and the amount was handed to him by the notary. The latter having absconded, the executor demanded, through a Notary Public, a compliance on the part of *Delacroix* with the terms of sale, and on his refusal to comply further than he had already done, he took a rule upon him to show cause why he should not comply with the terms of the adjudication and accept the sale.

This rule is resisted by the purchaser, on the ground that the payment of the money to the notary and delivery of the notes was done with the consent of the executor, and the same is in itself a compliance with the terms of adjudication.

It is contended on the part of the purchaser, that the case is identical with the case of *Breen* v. *Schmidt*, 6 An. 13; that here as in that case, the vendor having withdrawn a portion of the funds from the notary, must be presumed to have consented to the payment of the money to the notary by the purchaser. But it must be remarked, that in the case cited the decision is placed expressly on the peculiar facts of the case, and on the conclusions of the District Court upon the facts, which the Supreme Court did not feel authorized to disturb.

In the case of *Brown* against the same defendant, in the 7th An. 349, this court, with a slight variation of the testimony, came to a different decision, and, it seems to us, the doctrine cannot be extended beyond the case in the 6th Annual, without violating the well settled law on the subject of tender and payment.

In order to make a valid tender, the money must be placed in the power of the adverse party. If paid into court, it must be with the intention on the part of the debtor that the creditor shall be at liberty to take it out of court. If deposited with the notary, as the agent of both parties, it must be with the consent that the creditor shall withdraw it if he sees fit. If not so deposited, the property in the money remains in the debtor, the notary is his agent and the money is at his risk. C. P. 404, 407; *DeGoer* v. *Kellar*, 2 An. 496.

In the present case the money was delivered to the notary *on deposit*. And it does no appear to have been placed there with the consent of the purchaser that it should be withdrawn by the executor. On the contrary, it may be fairly inferred from the manner in which the deposit was made, that neither the money nor the notes were to be delivered to the executor until the further consent of the depositor should be manifested, and a satisfactory certificate of mortgage produced.

Now, did the borrowing of fifty dollars of the notary by *McCrystal* change the character of the deposit, and place the money and notes at the risk of the *Succession of O'Keefe* ?

We think this can hardly be affirmed. The money and notes could only be placed at the risk of the succession or executor by a formal putting in default or by a deposit for the benefit of the succession, with the express or implied consent of the executor.

Here the deposit cannot be considered as so made, for the depositor, it is to be presumed, did not intend to part with the control of the property, the money and notes deposited, until he had obtained from *McCrystal* a satisfactory title.

The money borrowed by *McCrystal* of the notary appears to have been a matter between them, (*McCrystal* and the notary.) It was borrowed " on account." It does not appear to have been demanded of the notary, as money belonging to *McCrystal*, as executor, but as money belonging to the notary, and which was to be replaced probably when the price was received of the purchaser. The money received from the notary was not shown to have been received on account of the succession, and it must be presumed it was for some private object of *McCrystal*.

The unfaithfulness of the notary in loaning to *McCrystal* a part of the funds of his principal, if the money lent was really a part of the same, has proved less injurious to the purchaser than it would have been had the notary been a faithful depositary up to the day *only* of his departure with the whole. What was loaned to *McCrystal* has been saved, and as the latter has offered to return the same to *Delacroix*, who has refused to receive it, it may be considered as so much of the first instalment already in the hands of the executor.

It is, therefore, ordered, adjudged and decreed by the court, that the judgment of the District Court be avoided and reversed, and that the said rule taken upon the said *Cyril Delacroix* be made absolute, and that he be ordered to comply with the said terms of the sale made the thirtieth day of December, 1854, fifty dollars of the instalment in cash being considered as already in the hands of the executor, to the credit of the said *Delacroix*, and it is further ordered, that the defendant pay the costs in both courts.