Estelle Alexandrie, Wife of, &c., *v.* B. Saloy et al.

The deposit of the money in court, after the institution of a suit on a note, is not a payment of the note to the creditor or to any one authorized to receive it for him.

Where, in an act of mortgage, it was stipulated that, in the event of the note not being paid at maturity, the attorney's fees for collection should be paid by the debtor, but it was shown that the suit for the collection of the note was unnecessary—*Held :* That the fees could not be secured by the creditor.

APPEAL from the Fifth District Court of New Orleans, *Eggleston,* J.

*A. & A. Pitot,* for plaintiff. *G. & C. E. Schmidt,* for defendants and appellants.

Land, J. The defendant was the holder of a promissory note made by the plaintiff, a married woman, payable to her own order, and by her endorsed in blank, for the sum of seven hundred dollars, and secured by mortgage on certain slaves.

The defendant instituted executory proceedings for the recovery of the amount of the note, and the sum of seventy dollars, attorney's fees, which the plaintiff had stipulated in the act of mortgage to pay, in the event the note should not be paid at its maturity.

This suit was instituted to enjoin the execution of the order of seizure and sale, on the grounds stated in the petition, as follows :

"That your petitioner being indebted to one *Joseph Pouet,* in the sum of one thousand dollars, secured by first mortgage on two slaves, and by second mortgage on the four slaves already securing the above sum of $700 due to said *Saloy,* did apply to said *Pouet* and request him to pay the said note of $700 in the hands of *Saloy,* and to become thereby her only creditor for the sum of $1700, with mortgage on the six slaves. That said *Pouet* consented thereto, and for the purpose of carrying into execution the above propositions, applied to said *Saloy* and offered him the sum of $700, being the amount of the note held by him. That said *Saloy* did not then accept the sum offered to him, but advised the said *Pouet* not to pay the said note before protest, for fear of losing the mortgage rights attached to the same, thereby leading the said *Pouet* into error as to the law, and told him to be quiet, and that as soon as the note would be protested, he would advise the said *Pouet* of the facts, so that he could pay and retain his privilege. That said *Pouet,* ignorant of the law, and reposing full confidence in the promise of *Saloy* to inform him of the protest of the note, withdrew without paying the same.

"That on the 10th of February, 1858, the said *Pouet,* having been previously informed by your petitioner that said note had been protested on the 13th, applied to said *Saloy* at 10 o'clock A. M., in order to pay him the amount thereof, when he was answered that the note was already in suit in the Fifth District Court of New Orleans. That said *Pouet* then went to the Fifth District Court, where he was soon followed by *Saloy,* and observed to him in the presence of the deputy clerk, that he had acted wrongly in putting said note in court so promptly, when he knew that the same would have been paid on presentation, and he had himself promised to bring it to said *Pouet* immediately after protest, and the said *Pouet* then offered again to give his check for the note and protest, when he was again

prevented by said *Saloy* from so doing, under the pretext that it was necessary to wait for the Judge, before whom *Saloy's* lawyer would make a motion to subrogate *Pouet* to all the rights secured by the mortgage.

" That afterwards, the said *Pouet* was informed for the first time, by *Saloy's* own lawyer, that, besides the note, there was a claim of $70 for lawyer's fees, for filing the petition in court and demanding the writ of seizure and sale. That upon receiving information of such a claim, petitioner refused to pay the same, or to permit the said *Pouet* to pay the same in her name, inasmuch as *Saloy* had no business or necessity to institute proceedings against her to obtain payment of his note, and had positively promised to inform *Pouet*, who was then your petitioner's agent, of the protest of the note, which, if he had fulfilled his promise, would have precluded the necessity of any further proceedings on his part.

" Petitioner further avers, that she had deposited in court the sum of $703, amount of note and protest, subject to the demand of said *Saloy*, &c."

The facts thus stated in the petition were substantially proved on the trial in the court below, and the District Judge perpetuated the injunction and condemned the defendant to pay the sum of $75, attorney's fees, and the further sum of $100 dollars damages sustained by plaintiff, by the wrongful acts committed by defendant.

I.　The facts stated in the plaintiff's petition *do not constitute a real tender of payment of the note.* When the tender is for money due, it must be made to the creditor himself, or at his actual or chosen domicil, by the debtor, or by his agent in the presence of two witnesses residing in the place, by tendering to such creditor the sum which is due to him, with the interest, and such costs as he may have incurred, and exhibiting such sum to him in the presence of such witnesses, in the current coin of the United States. Code of Practice, 407. *DeGoër* v. *Hellar*, 2 An. 496.

II.　*The deposit of the money* in court with the clerk *was not a payment of the note*—for the reason, that it was not a *payment to the creditor,* or *to any person authorized by him,* or *by a court,* or *by law, to receive it for him.* C. C. 2136. The deposit with the clerk was after the institution of the executory proceedings, and cannot, therefore, affect the question of the defendant's right to institute the same.

It was, however, stated and admitted in argument, that the defendant had ratified the payment to the clerk by receiving the money from him, and this statement the court will consider as true.

The defendant *had the legal right to institute suit on the note,* at the time of the commencement of the executory proceedings and *this right continued* until the amount of the note was paid to the clerk, and *ratified by him.* It was then extinguished, and the injunction was, therefore, rightfully perpetuated.

The question whether the plaintiff is bound to pay the attorney's fee of seventy dollars, stipulated in the act of mortgage, is independent of *the strict legal right* of the defendant *to sue on the note*—but depends on the intent and meaning of the parties, in making the stipulation.

We understand the stipulation to mean, that the plaintiff should pay the attorney's fees, in the event that *a suit should be necessary for the collection of the note ;* and we are of opinion that no such necessity existed, and that the plaintiff is, therefore, not bound to pay the same.

The suit for the collection of the note was unnecessary, and perhaps ill-natured, but as the defendant had the legal right to institute it, he cannot be condemned in

*damages for its exercise. There had been neither a legal tender, nor payment of the note.*

It is, therefore, ordered, adjudged and decreed, that the judgment be affirmed so far as it perpetuates the injunction, and that it be reversed so far as it condemns the defendant to pay seventy-five dollars attorney's fees, and one hundred dollars damages, and that the plaintiff pay the costs of this appeal, and the defendant the costs of the lower court.

VOORHIES, J., absent.