## SCHRAMM v. TOYE BROS. YELLOW CAB CO. *

### No. 16018.

Court of Appeal of Louisiana. Orleans.

June 22, 1936.

Normann & McMahon and Harold M. Rouchell, of New Orleans, for appellant.

John P. Sullivan and David Sessler, both of New Orleans, for appellee.

JANVIER, Judge.

Frederick C. Schramm is the owner of a large commercial building in this city, which, for several years, had been leased by Toye Brothers Yellow Cab Company. From year to year the lease was customarily renewed by the execution of a new written contract. In the lease contract, with which we are now concerned, there was a stipulation which reads as follows: "At the expiration of this lease, or its termination for other causes, Lessee is obligated to immediately surrender possession, and should Lessee fail to do so, he consents to pay as liquidated damages five times the rent per day, with attorney's fees, costs, etc. Lessee also expressly waives any notice to vacate at the expiration of this lease and all legal delays, and hereby confesses judgment with costs placing Lessor in possession to be executed at once. Should Lessor allow or permit Lessee to remain in the leased premises after the expiration of this lease, this shall not be construed as a reconduction of this lease."

This lease terminated on September 30, 1929, but the Yellow Cab Corporation did not vacate the premises until October 31, 1929.

Claiming that, by reason of the stipulation from which we have quoted, the said company had become obligated to him for rent for thirty-two days at five times the normal daily rate, plaintiff filed this suit seeking judgment for that amount (he has since conceded that the claim should have been made for only thirty-one days) and he included a claim for attorney's fees of $150, in accordance with a stipulation in the lease under which, in case of default, a reasonable attorney's fee is provided for.

In the alternative plaintiff alleged that, if it should be considered that, by the action of the defendant in remaining in the premises, a reconduction of the lease had been effected, then he should obtain judgment for the monthly rental which had accrued up to the time of the filing of the suit. This alternative claim has since been abandoned, it being now conceded that, because of the latter part of the stipulation above quoted, there was no reconduction of the lease.

Therefore the claim, as we now find it, is for thirty-one days' rent at five times the daily rate set forth in the lease and for an attorney's fee.

Defendant admits the execution of the lease and concedes that it did not vacate the premises on September 30, 1929, and continued to occupy them during the entire month of October, but it maintains that this continued occupancy resulted from a new and independent agreement entered into with plaintiff during September, under which it was understood that it might continue in possession for an additional month upon payment of rent at the rate set forth in the former lease, to wit, $260.34, instead of on the basis agreed upon as liquidated damages and fixed in the written lease at five times the normal daily rate.

On the merits, then, the case presents only one question, and that one of fact, viz.: Was the property occupied during October, 1929, as the result of a verbal agreement under which $260.34 was to be paid, or were the terms and conditions of that occupancy controlled by the provisions of the former lease. .

From a judgment sustaining the contention of defendant that only $260.34 was due, plaintiff has appealed. .

■ There are two preliminary questions of law which are raised by defendant, either of which, if settled in accordance with its views, would defeat the claim of plaintiff. The first is raised by motion to dismiss the appeal because of alleged acquiescence of plaintiff in the contention of defendant.

This contention is based on the fact that when defendant had, with its answer, tendered the amount admittedly due and had deposited this amount in the Registry of the court, plaintiff, on motion, obtained an order permitting him to withdraw the said amount. Defendant maintains that, where a larger sum is sued for, and a defendant, admitting indebtedness for a smaller sum, tenders the smaller sum and deposits it in court, the withdrawal of that smaller amount estops the plaintiff to proceed with the claim for the amount originally sued

for. This contention made here by motion to dismiss the appeal was also made by exception in the district court. There the exception was overruled.

The order under which the deposit was made and the order under which the amount thereof was withdrawn show plainly that there was involved nothing whatever resembling, in the slightest degree, a tender of an offer of compromise, or an acceptance of such an offer. The order which authorized the deposit stated that it, the said deposit, represented "the amount admitted to be due by the defendant for the Month of October, 1929" and further set forth that the deposit was made "for the benefit of the plaintiff." The order which authorized the withdrawal by plaintiff recognized the fact that the said withdrawal was "without prejudice to Mover's rights to proceed with the prosecution of this suit, for recovery of the amount alleged to be due and owing under the contract herein sued on." Of course, had there been any contention by defendant that it owed nothing whatever, and had it tendered the amount in an effort to compromise a possible liability for a larger sum, then the withdrawal by plaintiff would have estopped him to claim more, but that is not the case. On the contrary, defendant, though denying that it owed the amount claimed by plaintiff, admitted that it owed him $260.34 in any event. This admission was made without condition or reservation, and we see no reason which would prevent plaintiff from withdrawing the deposit so made.

The deposit was obviously made to avoid a possible liability for costs. There was no other object. Had there been any other condition, then the deposit would not have served the purpose for which it was made because, in order that a deposit have the effect of permitting the depositor to escape the payment of costs, it must be made as an unconditional tender, and not as an offer to compromise.

In Succession of O'Keefe, 12 La.Ann. 246, the Supreme Court said: "In order to make a valid tender, the money must be placed in the power of the adverse party. If paid into court, it must be with the intention on the part of the debtor that the creditor shall be at liberty to take it out of court." See, also, R.C.C. art. 2140; Alexandrie v. Saloy, 14 La.Ann. 327.

In Jonathan Turner's Sons v. Lee Gin & Machine Co., 98 Tenn. 604, 41 S.W. 57, 38 L.R.A. 549, a case much relied on by plaintiff, obviously the deposit was made under a statute which had been interpreted by the Supreme Court as providing that the withdrawal of such a deposit should be construed as an acceptance of the amount deposited in full payment. The court discussed at length the distinction between a deposit made as a tender in full settlement and a deposit made of an amount admittedly due in any event, and said that in that case the deposit had been made under a statute which had been construed as requiring that the withdrawal should be considered as an acceptance of payment in full. That is not the situation which confronts us. Here defendant's answer, even if it had not been accompanied by a deposit of the amount admittedly due, would have been sufficient to authorize a judgment pro tanto against it for the amount admittedly due and plaintiff would have been entitled to obtain that judgment and to have then litigated over the additional claim. See Act No. 157 of 1912, as amended by Act No. 27 of 1926.

We find no merit in the motion to dismiss the appeal.

The second question of law which defendant raises and which must be disposed of preliminarily is presented in an exception of no cause of action which is based on the theory that there can be no claim for damages for the passive breach of a contract where the petition itself shows that the defendant has not been put in default. We note, however, that defendant's principal contention is that the contract, for the breach of which plaintiff claims damages, had been terminated and no longer existed, and we feel that defendant should not be heard to contend, on the one hand, that there is no such contract as that sued on, and at the same time that it is not liable for damages for the breach of that contract because it has not been put in default.

In Johnson v. Levy, 122 La. 118, 47 So. 422, 424, 16 Ann.Cas. 978, the Supreme Court said that "The want of default cannot avail a defendant who has absolutely denied the existence of the contract, for the breach of which damages are claimed."

The reason for the necessity of default in general and the reason why it is not necessary where the contract itself is denied are clearly set forth in Beck v. Fleitas, 37 La.Ann. 492, in which the Supreme Court said:

"It is apparent that the alleged violation of the contract is passive, and it is undisputed that, under the general rules of law, putting the debtor in mora is an indispensable prerequisite to the recovery of damages.

"But from the very nature of the rule, jurisprudence has deduced several unavoidable and important exceptions.

" 'The object of the putting in default is to secure the creditor his right to demand damages or a dissolution of the contract, so that the debtor can no longer defeat this right, by executing or offering to execute the agreement.' Moreau v. Chauvin, 8 Rob. [157], 161; Pratt v. Craft, 20 La.Ann. 291.

"It follows, therefore, that the rule does not apply to the case of a party who absolutely denies the existence of the contract, as it is not probable that he would in such a case offer to execute a contract which he entirely ignores.

"Hence it has frequently been held by this Court that in such cases the putting in default was not necessary. New Orleans & Nashville R. R. Co. v. Ganahl, 18 La. 510; Hivert v. Lacaze, 3 Rob. 357; Abels v. Glover, 15 La.Ann. 247."

It is conceded that in the two cases cited it was contended that there had been no contract at all and that there never had been one and that, to that extent, the cases differ from the one at bar because here it is conceded that the contract sued on did at one time exist. But the difference does not effect a distinction, for we see no distinction in law between a contention that no contract ever existed and a contention that the contract sued on has actually terminated and been superseded by another.

If, however, those cases may be thus distinguished, Southern Saw Mill Company v. Ducote, 120 La. 1052, 46 So. 20, 21, is a case in which even that distinguishing feature does not exist. There the contention was that the contract, which admittedly had once existed, no longer continued in force. The court said: "Counsel contends * * * that the defendant was not legally put in default for the nonperformance of his contract. None was necessary. Defendant denies in his answer and his testimony the continued existence of any contract with plaintiff after December 11, 1907."

We therefore think it well settled that, where the defense is that the contract sued on no longer existed at the time of the alleged breach, the defense of want of default is not available.

■ Furthermore, the lease itself contained a stipulation, from which we have quoted, with reference to the liquidated damages agreed upon in case of failure to vacate and this stipulation, we feel, may fairly be considered as a waiver of the necessity for default in case of breach.

We conclude, therefore, for both reasons, that no default was necessary, and, consequently, that the exception of no cause of action was properly overruled.

■ The general rule is that when issues of fact alone are involved the finding of the trial court should not be disturbed unless manifestly erroneous. Still, since, by the law of this state, an appeal on issues of fact is available to the litigant unsuccessful in the trial court, "an appellate court is in duty bound to consider and weigh the evidence for itself and reach its own conclusion based thereon." Draper v. Oppenheimer, 9 Orleans App. 3.

■ As the Supreme Court said in Fridge v. Talbert, 180 La. 937, 158 So. 209, 212: "The rule invoked applies only to those cases in which the appellate court is in doubt as to the correctness of the findings of the trial court. Where no such doubt exists, and the findings are clearly erroneous, the duty rests upon the appellate court to set them aside."

In that case the Supreme Court stated that there are situations in which an appellate court, by reason of the fact that it has the entire written record before it, is in a more favorable position, after mature and careful consideration and comparison of conflicting testimony, than was the trial court, to settle issues of veracity. We note the following: "A written record furnishes the opportunity for a more mature consideration of the stories told by the witnesses, for detecting the inconsistencies in the statements of individual witnesses, and for sifting the conflicting statements of opposing witnesses."

■ The entire defense is based on an agreement which the officials of defendant, Toye Brothers Yellow Cab Company, contend was made by Schramm with them on September 18 and which, on that day, was confirmed by their president by letter. On this foundation stone the entire defense rests. If it is insecure, then must the defense fail.

If that agreement was made on September 18, as they are now so positive that it was, and if it was confirmed by letter dated

that day, as they say is now evidenced by a copy of that letter, it is indeed strange that in their answer they did not expressly set forth the date of that agreement. Their answer is not specific, but is most general and vague on that most important point, the one issue upon which the entire controversy depends. The answer makes no mention of the day, or even of the month, in which this vital agreement was made and which day and which month they now so exactly and specifically fix.

Schramm testifies that he made no such agreement and that he received no such letter of confirmation, and his secretary, Miss Sweeney, who states that she was in charge of all correspondence, testifies that she at no time saw any such letter. Had Schramm made such an agreement and had he received such a letter, it is hard to believe that he would have done so absurd a thing as to write to defendant company, only a short time later, a letter demanding that "rent checks come forward as previously." It must be remembered that at that time Schramm labored under the impression that defendant intended to do what it had so often done in the past—simply remain in the premises and execute a new lease.

We consider it most significant that when defendant's president received Schramm's letter demanding that "rent checks come forward as previously," he consulted his attorney and had him make reply to the letter, and yet he obviously failed to advise the said attorney of the date on which the alleged agreement was made, or that it had been confirmed by letter.

Another circumstance which we consider most significant is that defendant itself failed to produce as a witness a certain Mr. Musso, whose testimony, if it had corroborated the statements of defendant's officials, would have been of the utmost importance. In fact, Mr. Musso's testimony was of such evident importance that the trial judge, when Musso was not produced by defendant, suggested that he should be called as a witness. Musso was the tenant in another building into which defendant company intended to move on the expiration of the lease with Schramm, and, according to defendant, Musso had sent a real estate agent, Passera, to ask that he be permitted to remain in the building then occupied by him for at least a part of the month of October, and defendant's officials testify that when Passera came to them to obtain permission from Musso, they stated that that would be satisfactory to them, provided Schramm would let them occupy, during the month of October, the building in which they then were. They state that it was because of this visit of Passera that they sent for Mr. Schramm on September 18 and asked his permission to remain in his building for the month of October on the original and normal rental basis, and that Mr. Schramm consented.

It is very important to notice that when Musso was placed on the stand he said that it was not until September 22 or 23 that he called on defendant corporation and asked permission to remain in his building a short time longer. If, then, he did not call on defendant until September 22 or 23, obviously their whole story falls, because they say it was on September 18 that they made the agreement with Schramm and that they made the agreement simply as a convenience to Musso to permit him to remain in his building, and yet Musso did not approach them until September 22 or 23.

Furthermore, the story of defendant is that it was Passera who came to them as the representative of Musso, and yet Musso denies this positively, scarcely knows Passera, and states that he came in person to obtain the permission to which we have referred. Mr. Musso further states that when he called on defendant to obtain the permission to remain in the building into which they were to move he saw Mr. Frank Toye, who did not go to see Mr. Schramm, or anybody else, but "said I could stay right away," and yet defendant's officers state that when Passera, not Musso, approached them, they could not agree to let Musso remain until they had first sent for Schramm and had obtained his consent that they might remain in his building after the 1st of October.

The story of defendant corporation's officials is that it was purely as a favor to Musso that they had agreed to let him remain in the building into which they were to move, and yet, when we sift the record, we find that the truth is that that building was being to some extent remodeled by them, or at least that there were changes being made in the interior and that the reason which prevented their moving into it on October 1st was that they could not get it ready by that time.

We must bear in mind that during the year 1929 the economic depression had not yet commenced and that rental values were high and that commercial property was rather easily rented, and yet, in spite of

these facts, we find Mr. Schramm, according to the evidence on behalf of defendant, entirely willing to sacrifice, possibly, the rental of his property for an entire year in order to let them remain in it for a single month. It is well known that leases in New Orleans customarily commence on October 1st and that after that date it is more or less difficult for landlords to obtain tenants for their vacant properties. Schramm unquestionably knew this and certainly would have been most anxious to obtain his property by October 1st in order that he might secure a new tenant had he not been under the impression that defendant corporation intended to remain in the premises ·for another year. Such impression would have been entirely inconsistent with an agreement made on September 18 to permit them to occupy the premises for the month of October.

We feel that we need refer no further to the record. We are convinced from a reading of it that defendant's version of the matter is not correct and that Schramm did not agree that defendant might remain in the premises at the normal rental.

Therefore, their whole defense fails.

Plaintiff is entitled to a judgment for the use of the premises at five times the daily rate fixed in the lease and for a period of thirty-one days. He is also entitled to a reasonable attorney's fee, and we think that $150 is a fair allowance on this item. The lease provided for a monthly rental on the following basis: "Two hundred seventy five dols. ($275) for first three months, Two hundred sixty & 34/100 dollars ($260.34) for the following six months, and Two hundred sixty & 33/100 dollars ($260.33) for the last three months, payable at end of month."

Therefore, the monthly rental for the last month was $260.33, and it is this figure which should be taken into consideration in interpreting the meaning of that clause which fixed the liquidated damages at "five times the rent per day, with attorney's fees, costs, etc." The monthly rental of $260.33 on a thirty-day basis, which we think is the basis which should be used to determine the daily rate, amounts to $8.67 per day. Five times that figure would be $43.35 and thirty-one days at that rate would make the total amount due for rent $1,343.85, which is the amount to which plaintiff is entitled, together with legal interest from judicial demand and together with attorney's fees.

It is therefore ordered, adjudged, and decreed that the judgment appealed from be, and it is, annulléd, avoided, and reversed, and that there now be judgment in favor ·of plaintiff, Frederick C. Schramm, and against defendant, Toye Brothers Yellow Cab Company, in the full sum of $1,343.85, with legal interest from judicial demand, and for $150 as attorney's fees, together with all costs.

Reversed.