LOTTINGER, Judge.
This action was instituted by an insured against his collision insurer to recover damages to his 1955 model Buick automobile occasioned by an accident which occurred in the city of Opelousas on June 2, 1957. The petition recites that the vehicle immediately before the accident had a cash value of $2,000 and that immediately after the accident had a cash value of $300. The prayer, therefore, is for judgment in the sum of $1,700 together with the statutory penalty of 12% and attorney fees.
The Lower Court rendered judgment as prayed for and the matter is now before us on an appeal taken by the defendant.
The issuance of the insurance policy (with its $50 deductible provision) and the occurrence of the accident were stipulated to. It was further stipulated that defend *853 ant had offered plaintiff the sum of $1,132.-89, being $1,182.89 less the $50 deductible, which offer had been rejected by the latter, he being of the opinion that he had suffered a total loss and was, therefore, entitled to the actual cash value of the vehicle immediately prior to the accident less its .salvage value afterwards.
We observe at the outset that the insurance contract on which the suit is based is a standard one, limiting the insurer’s liability for loss under Paragraph 14 thereof as not to exceed either
“(1) the actual cash value of the automobile, or if the loss is of a part thereof the actual cash value of such part, at time of loss or (2) what it would then cost to repair or replace the automobile or such part thereof with other of like kind and quality, with deduction for depreciation, or (3) the applicable limit of liability stated in the declarations.”
The plaintiff testified that the automobile had been purchased when new at a cost of $3,424.14 and had some 18,000 miles on it at the time of the accident. He said that he had refused the defendant’s ■offer because “nobody wanted to fix the car” and that in his opinion he had suffered a total loss. He described the damage sustained by the car as being to the front and side of the body. Pie made no mention of the motor and admitted that ■the frame had not been bent.
Mr. T. T. Lafleur, Jr., the then sales manager of Lafleur Buiclc Company, Inc., of Opelousas from whom plaintiff had purchased the car, testified that he was familiar with the car and that it had a value of $2,000, before the accident and that his firm was in a position to offer $300 for the salvage of the car. This witness testified that as sales manager he did not make ■estimates for damages but only for trading purposes. The company’s body man at that time, a Mr. Burleigh, was in charge of making estimates for job repairs, he stated. In spite of this testimony, however, when asked by the trial judge whether he thought the car could have been repaired and placed in the same condition as before the accident he stated “I don’t think it could have been.”
Mr. Charles Dore, machine shop operator and salvage yard operator testifying on behalf of plaintiff, stated that he was familiar with the car and that it had a value of $2,000 before the accident and, further, that he had made a salvage bid on it afterward of $300. He stated further that being strictly in the salvage business he had made his bid with no intention of repairing it.
Mr. Leo Carrón, a man of 16 years experience in the automotive repair and salvage yard business called by plaintiff, said that he knew the car and thought it worth $2,000 before the accident. While he saw the salvage, as he termed it, he did not examine it, but nonetheless thought it worth $300. When asked if he thought it could be repaired this witness said neither yes nor no but merely stated that he did not care for the job. Further along this line he stated:
“A. I would put it this way, judging from the way Mr. Collins talked when I spoke to him, he was very much disgusted with the car being wrecked and I did not feel that I could repair the car to his satisfaction, now it would have been that maybe the paint would not have quite matched or maybe he would have thought that it didn’t drive right or it could be thousands of reasons that or why I think that I don’t think that I could have satisfied him.”
When asked whether he thought the LeBlanc appraisal Service (the agency who appraised the vehicle for defendant) was competent, the witness replied "I certainly do”. In response to a question by the Court as to whether the car could be repaired for about $1,100 the witness stated that he thought it could, provided there were no “hidden damages”. When , asked *854 what he would have done with the car had he bought it for $300 the witness replied that he might have repaired it and put it on the market for sale.
Mr. Lee Martin, body repair man with 13 years experience who testified on behalf of plaintiff, stated that he was familiar with the car and thought it worth around $2,100 before the accident. This witness would make no estimate as to the salvage value of the car and said that he did not make an estimate as to the cost of repair. In spite of this, however, he stated that he did not believe he could have repaired the car and put it in the same condition as it was before the accident.
Mr. Percy Credeur, called by plaintiff, testified that he had been in the automobile repair business for some 11 years and that before the accident the car was worth $2,100 or $2,200. He later stated that he was not in the body repair business but would have bought the car for junk for $250 or $300. He testified that he did not make an estimate of the cars as far as repairs were concerned.
Mr. Larry LaCombe, insurance agent who wrote the subject policy, was called by defendant and testified that upon being notified by plaintiff of the claim he turned it over to a Mr. May, adjuster of Lafayette, who proceeded to have an appraisal made by the LeBlanc Appraisal Service. An attempt was made to settle the matter on the basis of this appraisal but the proffered draft was refused by plaintiff.
Mr. Paul May, the adjuster, testified that upon being notified of the claim he contacted the LeBlanc Appraisal Service which rendered an appraisal of $1,182.89 to repair the car. He explained that the procedure followed in such matters is for the appraiser to estimate the cost of repairing the car which estimate is in turn submitted to a garage or garages for acceptance or rejection. In this case the appraisal was submitted to the Lafleur Buick Company, Inc., which agreed to repair the car for the sum of $1,182.89.
Mr. Joe LeBlanc, independent appraiser of 32 years experience, testified that he was the one who actually made the appraisal. He stated in detail how the appraisal was made, how much time it took;, etc., and that it was then submitted to the Lafleur shop foreman, Mr. Burleigh, who went over it with him and who, after making some relatively minor adjustments, accepted it for Lafleur Buick. The car at this time was already at Lafleur’s, evidently having been towed there after the accident.
Mr. Marion J. Burleigh, shop foreman, of Lafleur Buick, corroborated Mr. Le-Blanc’s testimony and stated that he made-a thorough examination of the automobile-with the estimate, accepted it and signed, it on behalf of Lafleur. He stated on two-occasions that the car could have been repaired and put in as good condition as it was before the accident.
The LeBlanc appraisal, introduced into, evidence as “D-l”, consists of three pages., and is a detailed, itemized list of the parts, needed, their estimated cost and the esti— mated labor cost for each item.
We cannot help but be impressed by the-fact that not one of the plaintiff’s witnesses ever made a thorough and detailed.-’ examination of the automobile with a view-towards estimating the cost of repairing-it. They merely stated in general terms, their opinion as to whether it could be-repaired and estimated its value both before and after the accident. And, as pointed out above, one of them, Mr. Leo Car-rón, was of the opinion that it could have-been repaired for about $1,100 if there-was no “hidden damage”, the existence of" which is not revealed by the record.
We are of the opinion that the-positive, detailed and itemized estimate offered by defendant is without doubt entitled to greater weight than the general' and overall testimony offered’ hy^ plaintiff. *855 and that, accordingly, the plaintiff is only entitled to the sum of $1,182.89, less $50, or the sum of $1,132.89. As this amount was tendered to the plaintiff (conditioned upon his executing a proof of loss in said amount), there was no arbitrary or capricious denial of liability under the policy, so therefore penalties and attorney’s fees under LSA-R.S. 22:658 for non-payment of the claim will not be awarded. McMahon v. Manufacturers Cas. Ins. Co., 227 La. 777, 80 So.2d 405; Hart v. Springfield Fire & Marine Ins. Co., 136 La. 114, 66 So. 558.
Based upon this tender, the defendant-appellant seeks to avoid liability also for five per cent interest on the amount of the liability for which cast, citing Isadore v. Washington Fire & Marine Ins. Co., La.App., 75 So.2d 247; but in that case, the defendant “deposited the amount in the registry of court * * * when the suit was filed”, 75 So.2d 249. Under Code of Practice, Articles 404-418 (esp. Arts. 404, 415) and LSA-Civil Code, Articles 2167-2169, a “real tender” exonerates the debtor from the debt and also from interest and court costs accruing subsequent to such real tender. However, the debtor’s tender of $1,132.89 herein was conditioned upon its insured’s executing a “proof of loss” restricting the latter’s recovery to such amount. As the tender of the amount for which the defendant was undoubtedly liable under the policy was conditioned upon the plaintiff (its insured) relinquishing his rights to claim a greater sum, such was not a real tender sufficient to avoid the imposition of legal interest and court costs. Succession of O’-Keefe, 12 La.Ann. 246; United Novelty Co. v. Salemi, La.App. 2 Cir., 68 So.2d 808; Garrell v. Good Citizens Mut. Ben. Ass’n, La.App.Orleans, 11 So.2d 259, amened, La.App., 11 So.2d 657, modified in other respects 204 La. 871, 16 So.2d 463; Schramm v. Toye Bros. Yellow Cab Co., La.App.Orleans, 169 So. 116, amended La.App., 170 So. 44; Economon & Theodes v. Rizzo Tromatore & Co., Orleans, 3 La.App. 295; Israel v. State National Bank, 6 Orleans App. 325. Cf., Darvie v. American Bankers Ins. Co., La.App.Orleans, 80 So.2d 541.
For the reasons assigned, the judgment appealed from is hereby amended to read as follows: It is ordered, adjudged and decreed that there be judgment herein in favor of petitioner, Merrick Collins, and against the defendant, Employers Liability Assurance Corporation, in the full sum of $1,132.89, with legal interest thereupon from date of demand until paid. The costs of the proceedings below to be paid by defendant-appellant; the costs of this appeal to be paid by the plaintiff-appellee.
Judgment amended and affirmed.