241 So.2d 574 (1970)
Mabel R. PICHAUFFE et al.
v.
Wilson J. NAQUIN et al.
No. 8098.
Court of Appeal of Louisiana, First Circuit.
November 16, 1970.
*575 Harry T. Lemmon, of Vial, Vial & Lemmon, Hahnville, for appellants.
John L. Lanier, of Pugh, Lanier & Pugh, Thibodaux, for appellees.
Before LOTTINGER, SARTAIN and PICKETT, JJ.
PICKETT, Judge.
The plaintiffs, husband and wife, bring this suit for damages as a result of an automobile collision which happened on June 1, 1967, at about 1:45 p. m., on Louisiana Highway No. 316, in the Parish of LaFourche, about six miles east of the city limits of the City of Houma, Louisiana. The State Farm Mutual Automobile Insurance Company, the liability insurer of Wilson J. Naquin, was made a co-defendant. The plaintiffs allege that the plaintiff, Mabel R. Pichauffe, was driving her automobile in a northerly direction on Louisiana Highway 316, when the vehicle being driven by her collided with an automobile being driven by Wilson J. Naquin in a southerly direction on the same highway. The plaintiff, Mabel R. Pichauffe, alleged that she suffered severe bodily injuries, particularly to her back. The defendants answered the complaint with a general denial of liability. At the beginning of the trial on the merits, the plaintiff caused Wilson J. Naquin to be dismissed as a party defendant and agreed to limit the recovery on behalf of the plaintiffs to the limits of the insurance policy filed in evidence.
After Mr. Naquin had been dismissed from the suit, and it had been stipulated that the sole issue before the court was the matter of quantum, the State Farm Mutual Automobile Insurance Company, (sometimes hereinafter referred to as State Farm) through its attorneys offered $3,600.00 in cash to the plaintiffs as a tender of an amount that defendant deemed sufficient to cover any judgment that might be rendered in favor of plaintiffs. The plaintiffs rejected the offer, and requested a trial of the case. After a trial on the merits, the trial court awarded the plaintiff, Mrs. Mabel R. Pichauffe, a judgment for the sum of $3,003.20, and the plaintiff, Marcelin Pichauffe, a judgment in the amount of $396.90, against State Farm. The judgment provided that all costs prior to the trial date should be paid by the defendant, and that all costs incurred thereafter should be paid by the plaintiffs. The trial court, also, limited the interest at the rate of five per cent per annum on the amount of the judgment from judicial demand, until the trial date. The plaintiffs have appealed.
The plaintiffs complain that the trial court failed to award adequate amounts for both general damages and for loss of wages; and that the trial court erred in finding that the offer made at the beginning of the trial on the merits by State Farm to plaintiffs of the sum of $3,600.00 to cover the amount of any judgments that might have been rendered in favor of the plaintiffs was a tender of payment and not a compromise offer.
It is the law and settled jurisprudence of this state that the assessment of damages for offenses and quasi offenses is largely in the trial court's discretion and *576 ordinarily will not be disturbed. LSA-C.C. Article 1934, Sub-Division 3, provides:
"Although the general rule is, that damages are the amount of the loss the creditor has sustained, or of the gain of which he has been deprived, yet there are cases in which damages may be assessed without calculating altogether on the pecuniary loss, or the privation of pecuniary gain to the party. Where the contract has for its object the gratification of some intellectual enjoyment, whether in religion, morality or taste, or some convenience or other legal gratification, although these are not appreciated in money by the parties, yet damages are due for their breach; a contract for a religious or charitable foundation, a promise of marriage, or an engagement for a work of some of the fine arts, are objects and examples of this rule.
In the assessment of damages under this rule, as well as in cases of offenses, quasi offenses, and quasi contracts, much discretion must be left to the judge or jury, while in other cases they have none, but are bound to give such damages under the above rules as will fully indemnify the creditor, whenever the contract has been broken by the fault, negligence, fraud or bad faith of the debtor."
In the case of Lomenick v. Schoeffler, 250 La. 959, 200 So.2d 127, the Supreme Court of Louisiana, said:
"We recognize that in cases of this type the Constitution makes it the duty of appellate courts to review both the law and the facts, but in their examination of the fact these courts must give effect to the basic law set out in Article 1934(3) of our Civil Code that in the assessment of damages in cases of offenses and quasi offenses `much discretion must be left to the judge or jury'. This law is plain and means what it says, and it is the duty of all appellate courts to follow it. Under this rule the amount of damages assessed by the judge or jury should not be disturbed unless the appellate court's examination of the facts reveals a clear abuse of the discretion vested in the lower court."
The plaintiff, Mrs. Pichauffe, testified that immediately after the accident her chest, arms and legs bothered her most; but that after about two hours her back began giving her trouble. On the next day after the accident, June 2, 1967, she went to her physician, a general practitioner, Dr. Charles Cary Spence, with these complaints but complaining most of the pain in her chest, left knee and low back. X-rays taken by Dr. Spence revealed no bone injury. Dr. Spence testified that he saw Mrs. Pichauffe on June 2, 1967, at which time she was complaining of the pain in her chest, left knee and low back. His examination disclosed soreness in both sides of her chest, and generalized tenderness in the low back area, and some soreness on the inner side of her left knee. Dr. Spence treated the plaintiff conservatively with muscle relaxants and pain relievers. He continued to see and treat the plaintiff at various intervals, which treatment included Microtherm treatments. Because of the persistent complaints of pain in the lumbo-sacral area, when he saw plaintiff on August 8, 1967, he prescribed a lumbosacral corset and referred the plaintiff to Dr. Robert Bateman, an orthopedic surgeon, for an orthopedic evaluation. Dr. Bateman examined plaintiff August 11, 1967; and his findings are fairly summarized in the following excerpt from his testimony:
"A. I found a well developed white female who at that time did not appear to be in acute distress. The examination was essentially limited to the back because this was the area of which she had been referred and was complaining of. The examination was essentially negative in the fact that I did not find any neurological deficit nor changes indicative of muscle spasm; the only thing that there was some pain in the center of the back in the area of the L-5 S-1 *577 area, but this was of mild nature, and this was only elicited with deep pressure."
Dr. Bateman expressed the opinion that plaintiff was able to return to her normal activities. He recommended to Dr. Spence that he continue plaintiff on the muscle relaxants and to continue wearing the corset and to take exercises for her back. On a visit to Dr. Spence on September 15, 1967, she reported to him that she had been free of back pain for about one week; and he told her she could return to light work. However, she later returned to see Dr. Spence, and complained of a recurrence of the back trouble; and he continued to see her at infrequent intervals until January 4, 1968.
At the request of State Farm, Mrs. Pichauffe was examined by Dr. K. Gerald Haydel, a general practitioner and surgeon, on January 25, 1968. Soon after the plaintiff was examined by Dr. Haydel, she was examined by Dr. Irving Redler, an orthopedic specialist. During the course of his examination, Dr. Redler discovered that plaintiff's right leg was shorter than her left leg. But it was Dr. Redler's opinion that the inequality of the leg length antedated the accident. However, he expressed the opinion that the prolongation of plaintiff's symptoms resulting from the accident could have been aggravated by the inequality of the leg length, which caused a pelvic tilt. He prescribed special shoes to correct the leg length inequality, and they had a beneficial effect.
After a careful examination of all of the medical evidence, we agree with the trial court that "there is no irreconcilable conflict in the testimony of the several doctors." We conclude as did the trial judge that Mrs. Pichauffe suffered an injury to her back as a result of the accident. It is true there is some speculation in the medical evidence as to whether the recurrence of pain from time to time resulted from new injuries or whether it was attributable solely to the original injury suffered in the accident. We cannot say, under the circumstances, that in view of all the evidence, the trial judge abused the "much discretion" vested in him by LSA-C.C. Article 1934 (3) in the lower court, in awarding the plaintiff, Mrs. Pichauffe, the sum of $2,000.00 for pain and suffering, and the sum of $1,003.20 for loss of earnings; and the further sum of $396.90 to Mr. Marcelin Pichauffe. See Lomenick v. Schoeffler, supra.
At the outset of the trial of this case, the defendant made what it called a "tender" of $3,600.00 to plaintiffs in cash. In connection with the purported "tender", counsel for defendant, said:
"At this time I hereby make a formal tender of the sum of $3,600.00 in cash legal currency of the United States before two witnesses, namely, Mr. Vernon Rodrique, Deputy Clerk of Court, and Deputy Roland Borne, bailiff of this Court, this tender being made under the laws of the State of Louisiana, and represents a tender of an amount which we feel is sufficient to cover the amount of any judgment which may be rendered in favor of plaintiffs. This tender is being made under the laws of this State in order that interest may cease running as of this date and also in order that plaintiffs, in the event they should continue this litigation and should judgment be for an amount less than the amount of this tender, then plaintiffs would, of course, bear the cost of this proceedings." (Emphasis supplied).
The plaintiffs contend the purported "tender", was not a real legal tender, but nothing more than an offer in compromise, which the plaintiffs rejected, because it was not unconditional, and would have necessitated the plaintiffs giving up their right to claim any additional amount. The defendant contends that because of the tender, it should not be required to pay any court costs incurred, or interest accrued, subsequent to the tender for the reason that the tender exceeds the judgment rendered *578 by the court. Counsel for defendant points out that the tender was made in compliance with Civil Code of Louisiana, and particularly Article 2167 et seq. Louisiana Civil Code Article 2167, provides:
"When the creditor refuses to receive his payment, the debtor may make him a real tender; and on the creditor's refusal to accept it, he may consign the thing or the sum tendered.
A real tender, followed by a consignment, exonerates the debtor; it has the same effect, with regard to him, as a payment when it is validly made; and the thing thus consigned remains at the risk of the creditor."
The plaintiffs argue that the offer made by counsel for the defendant does not satisfy the provisions of the above cited codal provision, particularly because the purported tender was not unconditional, and was not "followed by a consignment" of the cash. The defendant retained possession of the cash offered, or tendered. In support of their contention the plaintiffs cite Schramm v. Toye Bros. Yellow Cab Co., La.App., 169 So. 116, in which case the court held that for the defendant to escape the payment of costs by the deposit of an amount admittedly due, the deposit must be made as an unconditional tender, and not as an offer of compromise, with the intention that plaintiff be at liberty to withdraw the amount so deposited, without affecting the right of the plaintiff to claim a greater amount. The court, in the Schramm case, cites with approval the Succession of O'Keefe, 12 La.Ann. 246, in which the Supreme Court said:
"In order to make a valid tender the money must be placed in the power of the adverse party. If paid into court, it must be with the intention on the part of the debtor that the creditor shall be at liberty to take it out of court."
In the case of Collins v. Employers' Liability Assurance Corporation, La.App., 116 So.2d 851, this court held that where an insurer made a tender, conditioned upon the execution by the insured of a "proof of loss", whereby the insured would relinquish all his right to claim a greater sum, that such a tender was not a "real tender" sufficient to avoid the payment of legal interest and court costs accruing subsequent to the tender. In that case we said:
Based upon this tender, the defendant-appellant seeks to avoid liability also for five per cent interest on the amount of the liability for which cast, citing Isadore v. Washington Fire & Marine Ins. Co., La.App., 75 So.2d 247; but in that case, the defendant "deposited the amount in the registry of court * * * when the suit was filed", 75 So.2d 249. Under Code of Practice, Articles 404-418 (esp. Arts. 404, 415) and LSA-Civil Code, Articles 2167-2169, a "real tender" exonerates the debtor from the debt and also from interest and court costs accruing subsequent to such real tender. However, the debtor's tender of $1,132.89 herein was conditioned upon its insured's executing a "proof of loss" restricting the latter's recovery to such amount. As the tender of the amount for which the defendant was undoubtedly liable under the policy was conditioned upon the plaintiff (its insured) relinquishing his rights to claim a greater sum, such was not a real tender sufficient to avoid the imposition of legal interest and court costs. Succession of O'Keefe, 12 La.Ann. 246; United Novelty Co. v. Salemi, La.App. 2 Cir., 68 So. 2d 808; Garrell v. Good Citizens Mut. Ben. Ass'n, La.App. Orleans, 11 So.2d 259, amended, La.App., 11 So.2d 657, modified in other respects 204 La. 871, 16 So.2d 463; Schramm v. Toye Bros. Yellow Cab Co., La.App. Orleans, 169 So. 116, amended La.App., 170 So. 44; Economon & Theodes v. Rizzo Tromatore & Co., Orleans, 3 La.App. 295; Israel v. State National Bank, 6 Orleans App. 325. Cf., Darvie v. American Bankers Ins. Co., La.App. Orleans, 80 So.2d 541."
*579 We conclude the tender, or offer, made by defendants to plaintiffs of the sum of $3,600.00, was not a real tender, for the reason that defendant did not deposit the money in the registry of the court, or otherwise make it available to the plaintiffs, as provided by LSA-C.C. Article 2167 et seq. Therefore, the offer was not a real tender sufficient to avoid the imposition on defendant of liability for legal interest and court costs.
For the reasons assigned, the judgment appealed from is amended so as to award the plaintiffs legal interest on the sum of $3,003.20 in favor of plaintiff, Mabel P. Pichauffe, and the sum of $396.90 in favor of plaintiff, Marcelin Pichauffe, from date of judicial demand until paid, and all costs of court, including the fees of the medical experts as decreed by the trial court. As thus amended and in all other respects, the judgment is affirmed.
Amended and affirmed.