CRAIN, Judge.
This is an appeal of a judgment granting rent payments between lessee-lessor in accordance with the lease agreement.
FACTS
In February, 1981, Quality Manufacturing Company (Quality) leased space in its clothing factory by oral agreement to Direct Factory Stores (Direct) to operate a clothing outlet. The agreement provided for ten percent of the net sales as rent. This agreement was later reduced to writing and supplemented by a guarantee by Direct that net sales would exceed $20,000 per month or, in effect, that rent would be a guaranteed minimum of $2,000 per month. Direct sold various brands of clothing but the mainstay of its business was “Sans Souci”, manufactured on site by Quality. In the spring of 1982 the on site manufacturing of the Sans Souci line was shut down by Quality. In August of 1982, Direct opened a new retail outlet near the present one. Direct shifted all of its first-run business to the new store and sold second-quality goods at the original store. After opening the new store, sales at the old store decreased and rental payments were substantially less than those of the prior year. Direct tendered payments of 10% of the net sales for those months exceeding $20,000 and the minimum rental payment of $2,000 for those months that did not. Quality refused to accept the tendered payments. Quality filed a suit for the month of August, 1982, and supplemental amendments and suits for rental through August 1983. These suits were consolidated.
The trial court held that Quality was only entitled to receive either the base rental of $2,000 per month or ten percent of net sales of the defendant in excess of $20,000. The court further awarded no interest on these rental payments if a replacement check was tendered by Direct within ten days of the judgment.
Quality appeals the decision of the trial court. The issues for review are whether Direct breached its implied obligation of good faith performance to conduct its operations for the mutual benefit of the parties by transferring the first quality business to another location; whether the provision in the lease agreement providing for a minimum base rental in a percentage rental lease abrogates a lessee’s implied obligation to conduct its operations for the mutual benefit of the parties; whether the trial court erred in failing to award interest on the tendered payments.
BREACH OF THE LEASE
The trial court found that there was no written obligation in the lease agreement that would restrict the defendants operation or change of operations. The court did not find a breach of the implied obligation of good faith performance.
La.C.C. art. 2710 states: “The lessee is bound: 1) To enjoy the thing leased as a good administrator, according to the use for which it was intended by the lease. 2) To pay the rent at the terms agreed on.”
“In his occupancy of the property the tenant is obligated not to use the premises for a purpose inconsistent with that contemplated by the parties at the time they confected the lease.” Tullier v. Tanson Enterprises, Inc., 367 So.2d 773, 776 (La.1979).
The lease agreement provides that the lessee is to use the leased premises “for the purpose of operating a retail business”. There was no evidence of any other agreement or requirements as to use or the anticipated use of the premises. The trial court refused to admit parol evidence re *421 garding the purpose of the lease. This ruling was not objected to or assigned as error and is not before us.
The crux of the appellant’s argument is that the implied obligation of good faith performance imposed on all contracts by La.C.C. art. 2710 created a duty on the part of Direct to maintain a first quality clothing outlet at the leased premises. The trial court found an absence of evidence to prove this allegation. The only evidence of the parties intentions regarding the leased premises in the record is the lease agreement.
As stated by the Louisiana Supreme Court in Tullier:
Accordingly, where the lease is silent as to the intended use of the premises, we hold that the circumstances must clearly show that the parties intended only a certain use of the property in order for such use to be deemed the exclusively ‘intended’ use within the meaning of Articles 2710 and 2711. Evidence of the contemplated initial use is relevant in this regard, but it is not decisive. Where the silent lease and the surrounding circumstances are ambiguous concerning intended use, this ambiguity must be resolved in favor of the lessee. 367 So.2d at 779.
The lease agreement is silent as to the intended use of the leased premises other than “operating a retail business”. There is no evidence that the parties agreed otherwise. These parties were sophisticated businessmen. Had they intended to restrict the use of the leased premises it would have been an easy matter to incorporate a provision to this effect in the lease agreement. The lack of evidence showing otherwise requires that we resolve this matter in favor of the lessee. In addition, Direct was injured when the San Souci line of clothing was no longer manufactured at the premises. Direct had insisted that a window be installed between the outlet and the work area so that customers could see the production process. It would be inequitable to allow recovery by the lessor in these circumstances. This assignment lacks merit.
Having found that the lessee in this case did not have an implied obligation to maintain a first-quality clothing outlet we need not consider the effect of the base rental provision on the implied obligation of good faith performance imposed by La.C.C. art. 2710.
INTEREST
The appellant next argues that it was error for the trial court to fail to award interest on the award of the tendered rent payments.
Direct tendered payment, in the form of a check, for the minimum rentals for those months in which net sales were less than $20,000 and checks for 10% of the net sales for those months in which net sales exceeded $20,000. Quality refused to accept these payments.
The trial court’s judgment awarded interest if the award was not paid within ten days from date of judgment. Quality alleges that interest should have been awarded from the date the monthly payments were due or, at the least, the date of judicial demand.
La.C.C. art. 2000 states in part:
When the object of the performance is a sum of money, damages for delay in performance are measured by the interest on that sum from the time it is due, at the rate agreed by the parties or, in the absence of agreement, at the rate of legal interest as fixed by article 2924. (emphasis supplied)
The parties agreed that rent was due on the tenth day of each month.
However, La.C.C. art. 1869 states:
When the object of the performance is the delivery of a thing or a sum of money and the obligee, without justification, fails to accept the performance tendered by the obligor, the tender, followed by deposit to the order of the court, produces all the effects of a performance from the time the tender was made if declared valid by the court.
A valid tender is an offer to perform according to the nature of the obligation, (emphasis supplied).
*422 A formal tender is not required where it would be of no avail. Louisiana Highway Commission v. Bullis, 197 La. 14, 200 So. 805 (1941).
Quality refused to accept the rental payments because of a dispute in the amount tendered. It would have been useless for Direct to tender the same payment in cash. Consequently, we find that formal tender was not required. This produced the liberative effect of relieving Direct of the obligation of paying interest from the due date of the rental payments. However, Direct did not follow La.C.C. art. 1869 and deposit the tendered payments in the registry of the court. A tender must be followed by deposit in order to produce total liberative effects. Pichauffe v. Naquin, 241 So.2d 574 (La.App. 1st Cir.1970).[1] Therefore, it was error on the part of the trial court to fail to grant interest on the amount awarded from judicial demand.
We reverse the judgment of the trial court insofar as it grants interest from the date of judgment and grant interest on the amount awarded from the date of judicial demand.
All costs of this appeal are assessed against the appellant.
AFFIRMED IN PART, REVERSED IN PART AND RENDERED.

. See also Sims v. Hays, 521 So.2d 730 (La.App. 2d Cir.1988).