EASTERN  DIS.
*May,* 1841.

NEW-ORLEANS
AND NASHVILLE
RAIL ROAD CO.
*vs.*
GANALH & CO.

**NEW ORLEANS AND NASHVILLE RAIL ROAD
COMPANY *vs.* GANALH & CO.**

APPEAL FROM THE PARISH COURT FOR THE PARISH AND CITY
OF NEW ORLEANS.

When a party declines a compliance with his part of the contract, the institution of suit, claiming the performance of the contract, or damages in the alternatives is a sufficient putting of the defendant *in morâ,* if any was necessary.

It would even be an idle ceremony for one party to do certain acts on his part, before suing for a breach of the contract, after the other declines complying with it on his part.

Where the defendants refused a compliance with their contract, for reasons wholly unconnected with the conduct of the plaintiffs, they are liable for the damages.

This is an action to enforce the performance, or recover damages for the non-performance of a contract made with the defendants for the importation and delivery of 50 miles of Rail Road Iron.

The plaintiffs allege that in 1835 they contracted with the defendants, by written agreement, for the purchase and shipment of 50 miles of Rails, from England, by the first of February, 1836; to be purchased and shipped under the direction of the chief engineer of the road, who went out in October, for that purpose. That the Iron was to be furnished at the lowest selling price at the time; the plaintiffs paying the first cost and all charges, with 5 per ct. commission on the amount. The plaintiffs further show that the defendants wholly failed and refused to comply with their contract, to their great damage, having afterwards to pay much higher than the selling price at the time said contract should have been executed; and were greatly disappointed and delayed in their works in consequence of its non-performance. They pray that the defendants be required to perform their contract, or pay them $60,000, for damages for the failure to perform.

The defendants pleaded the general issue. They admit their signatures to the contract, but aver that by the interfer-

ence of the chief engineer in England with their agents, the contract was retarded and finally prevented from being carried into effect; that they were likewise prevented from complying with their contract by the officious and inefficient conduct of the plaintiffs, &c.

These pleadings formed the principal issue between the parties, and on which they went to trial before the court and a jury.

Upon the evidence taken and submitted to the jury, they returned a verdict for the plaintiffs and assessed their damages at $7500; and from judgment confirming this verdict the defendants appealed.

*Hoffman,,* for the plaintiffs.

*L. C. Duncan,* for the defendants.

*Bullard, J.* delivered the opinion of the court.

The plaintiffs allege that they entered into a written contract with the defendants, by which the latter engaged to import from England as soon as possible after the first of February, 1836, fifty miles of Rail Road Iron to be made according to the order of the chief Engineer, and to be approved by him. That the defendants were to pay all costs and charges and import the Iron at their risque, and that the plaintiffs on their part engaged in consideration of the promises, to pay the current price at the place of exportation at the time of the shipment, together with the costs and charges and five per cent. commissions upon the total amount of said costs and charges. The plaintiffs further allege that relying on the faith of said agreement they sent their Engineer to England, in October, 1835, where he remained until the next spring. That the defendants referred them to their correspondents in Liverpool and London to carry the contract into effect with every assurance that it would be complied with. They allege that they made early and repeated application to said correspondents to carry the contract into effect, but that various objections were made of

EASTERN DIS.
*May*, 1841.

NEW-ORLEANS
AND NASHVILLE
RAIL ROAD CO.
*vs.*
GANALH & CO.

which the defendants were advised. The petitioners finally aver that they have performed or have been always ready and willing to perform all they were bound to do by said contract, but that the same has been violated by the defendants to their great damage. They therefore pray that the defendants may be decreed to perform their contract by the delivery of four thousand tons on the payment by them at the price it was worth at the period the defendants were bound to deliver it, together with ten thousand dollars for the delay, or that they be condemned to pay damages which they estimate at sixty thousand dollars, and costs.

The defendants admit the contract, but deny their liability, because they say the plaintiffs both directly and by their agent Ranney, their chief engineer, so interfered in England with the defendants' agents as at first to retard and ultimately to prevent the due execution of the contract. The respondents further deny their unwillingness to comply with their contract, but they aver their readiness to carry the same into effect within a reasonable time, but were prevented by the capricious and inefficient conduct of the plaintiffs and their agents, who never complied with the obligations assumed by them in said contract, but on the contrary neglected and refused to comply with the same. They further aver that the plaintiffs, by their agents and by their engineer in England, undertook to make, and did actually make, contracts for the delivery, at New Orleans of a large quantity of rail-road iron on less favorable terms than would have been made by the respondents' agents. They conclude by praying judgment-in their favor.

The case, upon these issues, was submitted to a jury whose verdict for the plaintiffs being followed by a judgment, the defendants prosecute this appeal.

Besides the grounds of defence set forth in the answer, it has been urged in argument, that the defendants were never put legally in default, and without evidence of such putting in default damages cannot be recovered. This objection does not appear to us, from the evidence, to be insurmountable.

In the first place it may be remarked that this suit, in which the plaintiffs claim the performance of the principal obligation or damages in the alternative is a sufficient putting of the defendants *in morâ*, if indeed any such step was at all necessary after the defendants had declined furnishing the iron without a material modification of the contract. They did not wait for a formal demand, and the furnishing of a model by the agent of the company but at once declined, through their agents in England, complying with their contract. After this, it would have been an idle ceremony to have given a formal description of the rails as required by the engineer of the company. The evidence in the record shows that such was the case. The only correspondents of the defendants in England, upon whom they relied to fulfil their contract, positively refused to have any thing to do with it unless the money was placed in their hands in the first instance. Such a change of the contract appears to have been solicited in vain from the company. During the discussion upon that subject nothing was said of the company having failed to comply with any of the preliminary conditions imposed upon them by the contract.

But the defendants defend themselves on the ground that they were prevented from performing their part of the contract by the capricious and inefficient conduct of the plaintiffs' agent and engineer. The evidence on this subject is that the price of rail road iron rose very considerably while Mr. Ranney, the engineer, was in England. How far his representations of the extensive demand for the article to carry on the works contemplated by the plaintiffs, or other corporations, may have influenced the price is not so clearly shown; nor does it appear how an increase of price could have affected the defendants, who, according to the contract, as ultimately agreed on, were to be refunded the price they might have to pay, provided it was the current price at the time of purchase, together with charges and a commission of five per cent. upon both. One of the house of Coleman, Lambeth & Co. who was examined as a witness, testifies that "he immediately pointed out to him"

*Eastern Dis.*
*May, 1841.*

NEW-ORLEANS
AND NASHVILLE
RAIL ROAD CO.
*vs.*
GANALH & CO.

When a party declines compliance with his part of the contract, the institution of suit, claiming the performance of the contract, or damages in the alternative is a sufficient putting of the defendant *in morâ*, if any was necessary.

It would even be an idle ceremony for one party to do certain acts on his part, before suing for a breach of the contract, after the other declines complying with it on his part.

EASTERN DIS.
*May*, 1841.

(Ranney,) that the contract could not be executed in consequence of the 4th article, as no iron master would agree to manufacture rails according to a particular pattern subject to the fixing the price at a future period. The agreement was afterwards modified in that particular, but, still nothing appears to have been done in conformity therewith. The arrangements made or attempted to be made by Ranney, in Wales, under a letter of credit from Coleman, Lambeth & Co. were a deviation from the contract made with the defendants, and that house cautiously avoided adopting the agreement made by the defendants.

Where the defendants refused a compliance with their contract, for reasons wholly unconnected with the conduct of plaintiffs, they are liable for the damages.

Upon the whole, we cannot see in the conduct of the plaintiffs' agent or engineer, any legal defence to this action. It appears to us clear, that the defendants' correspondents in England declined executing the contract, for reasons wholly unconnected with his proceedings, and the evidence shows that the amount of damages awarded by the jury was justified by the facts of the case.

It is therefore ordered, adjudged and decreed, that the judgment of the Parish Court be affirmed with costs.