ALEXANDER HIVERT *v.* ELIZABETH ROSE JEAN PIERRE FIRMIN LACAZE.

Proof of an offer by the vendor to annul the sale of a slave, on the payment of a certain sum, will exonerate the plaintiff, in a redhibitory action, from the necessity of proving a tender of the slave. The tender would have been useless, without the payment of the sum demanded.

Where the record does not show whether a slave sold was delivered to the vendee at the time of the adjudication, or after the execution of the notarial act, it will be presumed that the vendor retained possession until the act of sale was passed. C. C. 2588.

Concealment by the vendor of a slave, of the fact that the intellect of the slave was not sound, is a fraud upon the purchaser, and will annul the sale. And so, though the sale were made, in the absence of the owner, by an agent aware of the defect.

Where the defendant, in a redhibitory action for the price of a slave, pleads a general denial, and specially denies that he was aware of the alleged unsoundness, he cannot set up in his defence that the alleged defect was one which the buyer might have discovered by simple inspection. Such an exception should have been pleaded, specially, to put the plaintiff on his guard, and afford him an opportunity of disproving the fact.

One who relies on a peremptory exception, founded in law, must plead it specially.

APPEAL from the District Court of the First District, *Buchanan,* J.

*Bodin,* for the plaintiff, cited the case of *Rouzel* v. *McFarland,* 8 Mart. 704.

*J. F. Pepin,* for the appellant. The plaintiff cannot recover. The defect alleged to have existed, is one that must have been discovered by simple inspection, and is, consequently, not a redhibitory vice. Civ. Code, art. 2497. *Briant* v. *Marsh,* 19 La. 391. Moreover, no tender has been proved. *Barrett* v. *Bullard,* 19 La. 281.

SIMON, J. This is a redhibitory action. The petition states that, on the 8th of August, 1838, the plaintiff purchased at public sale a certain slave named Betsey. That the sale was made at the request of the defendant, through his brother and agent, subject to be ratified by the defendant, who was then absent, within four months from the date of the sale. That the slave was fully guarantied against the vices and maladies prescribed by law, and that the price paid was four hundred and seventy dollars. The plaintiff further alleges, that on the very day the slave was delivered

to him, she showed the most decided proof of madness or idiocy. That the disease existed long previous to the sale, to the knowledge of the agent, who concealed the defect from the purchaser; and that the delivery of the slave was only made after the plaintiff had paid the price thereof. He prays that the sale may be cancelled, as having been made in fraud on the part of the vendor, and that the expenses incurred for keeping and taking care of the slave, to the amount of three hundred dollars, may be awarded to him, &c.

The defendant joined issue by first pleading a general denial of the allegations contained in the petition, admitting the sale made by his agent, but specially pleading that he never knew the slave to be mad. He further pleaded the want of amicable demand.

The inferior judge was of opinion that the action was well founded, and rendered judgment in favor of the plaintiff, allowing him also the reimbursement of the jail fees, and other charges for keeping and taking care of the slave during the pendency of the suit, without liquidating them; from which judgment, the defendant has appealed.

We agree with the judge *a quo*, that the offer, made by the defendant's agent to the plaintiff, to annul the sale if he would give one hundred dollars, as the person who had purchased the slave before the plaintiff bought her, had done, which fact is shown by the testimony of Romain Moret, is sufficient to exonerate the plaintiff from the necessity of tendering the slave, as the tender would have been useless, without paying the sum of $100. This offer is shown to have been made in a conversation which took place between the plaintiff and the defendant's brother and agent, in which the plaintiff complained that the slave was not such as she was guarantied to be, and desired Lacaze to annull the sale. This was refused, on the ground that the slave was sound; but accepted, provided $100 were paid.

On the merits, the evidence shows, that on the 8th of August, 1838, the plaintiff purchased at public auction a young negro-woman named Betsey, for the price of $470; and that, on the 9th, a notarial act of sale of the slave was executed. The record does not inform us whether the slave was delivered to the vendee at

the time of the adjudication, or after the passing of the notarial act; and we must, therefore, presume that the vendor retained the possession of the slave until the act was passed.  Civ. Code, 2588.  On the 12th and 13th, she was examined by two physicians, who recognized her as being the same slave that they examined on the 23d of June preceding, at the request of another individual, and declared that they were then, and are still, of opinion that she is, and for some time has been in a condition of mental imbecility.  One of them states in his certificate, that the state of imbecility in which he saw the slave *a month previous*, has undergone no change—*n'a fait aucun progrès vers le mieux*.  They also certify that she had a scar on her forehead, and that, struck with the strange expression of her countenance, (*habitude extérieure*,) and the incoherence of her answers, their attention was called to her intellectual faculties, from which examination they ascertained that she was, and is yet, totally unfit to perform any act which may require a combination of the simplest ideas.

We think the existence of the defect complained of, and the charge of fraud alleged in the petition, are sufficiently established by the evidence.  It is clear that, at the time of the sale, the vendor himself, or his agent, knew that the slave's intellect was not sound, and that the defect would subsequently be discovered by the purchaser.  It was his duty to declare it, and his concealing the malady with which he knew the slave to be afflicted, was a fraud practiced upon the plaintiff, which, of itself, is a radical vice in the contract, sufficient to annul it.  This vendor had already benefited once from a similar act of fraud, having sold the slave to another person some time previous, and consented to take her back, on being paid one hundred dollars by the purchaser.  The sale under consideration, tainted with this nullity, must, therefore, be cancelled, although executed in the absence of the owner of the slave.  *Qui facit per alium, facit per se.*

It has been insisted, however, that the defect complained of was an apparent one, and such as might have been discovered by simple inspection (Civ. Code, art. 2497); and we have been referred to the case of *Briant* v. *Marsh*, 19 La. 39.

Were we ready to extend the doctrine therein recognized to the present case, and to give to article 2497 of our Code, the

same broad interpretation, under a state of facts and circumstances so entirely different from those presented in the case above referred to, we still think the defendant would be precluded by his pleadings from claiming the application of that article. By his answer, he merely denies generally the allegations contained in the petition, and specially his alleged knowledge of the defect. This only puts in issue the existence of the malady, and the charge of fraud, relied on by the plaintiff; and if the defendant had really intended to establish his defence on the peremptory exception pointed out by article 2497, it was his duty to plead it, in order to put the plaintiff on his guard, and afford him an opportunity of producing evidence to counteract the effect of the exception. As the pleadings stood, the plaintiff may have thought it unnecessary to prove any other facts but those required in support of his action. It is a well known rule, that he who relies on a peremptory exception founded on law, must plead it specially (Code of Pract., arts. 345, 346); and the defendant having failed to do so, this part of his means of defence, if at all available, must be disregarded.

With regard to the expenses alleged to have been incurred by the sale, and by the keeping and taking care of the slave during the pendency of this suit, and other damages, we concur in opinion with the judge a quo, that, the seller knowing the defect of the slave sold, and having omitted to declare it, they ought to be allowed. Civ. Code, art. 2523. But as the amount thereof is not, and could not, perhaps, be finally liquidated by the judgment appealed from, owing to the continuation of the controversy, and to the pendency of the suit before the appellate court, we think this is properly a subject of subsequent investigation, as being a consequence of the cancelling of the sale; and that, under the particular circumstances of this case, justice requires it should be remanded, for the purpose of assessing the amount to which the plaintiff may be entitled.

It is, therefore, ordered, that the judgment of the District Court be affirmed with costs; and that this case be remanded to the lower court, for the purpose only of assessing the amount of expenses and damages due to the plaintiff, according to the legal principles recognized in the above decision.