## No. 9315.

### T. A. BECK vs. F. B. FLEITAS.

The rule of law (C. C. art. 1933) which requires, in an action sounding in damages for the passive violation of a contract, that the debtor be first put in default, has for its main object to secure the right of the creditor to claim his damages against an offer of the debtor to execute the agreement. Hence it cannot be invoked as a defense by a defendant who absolutely denies the existence of any contract. As a means of defense, the failure to put in default must be specially pleaded.

A party who violates his contract in bad faith, will be held responsible for all damages, including those which could not be foreseen at the time of making the contract, which can be traced to his breach of contract.

All damages must be proven with legal certainty. Statements of items in globo, without details when called for, are not sufficient.

APPEAL from the Twenty-fourth District Court, Parish of Plaquemines. *Livaudais*, J.

*Braughn, Buck & Dinkelspiel* and *J. S. Tully* for Plaintiff and Appellant.

*W. F. & D. C. Mellen* for Defendant and Appellee.

The opinion of the Court was delivered by

POCHÉ, J.    Plaintiff, who is a cooper, having for several years furnished molasses barrels to defendant, who is a sugar planter, brought suit against him on a balance of account in the sum of $503 75.

He was met by a demand in reconvention for the sum of $5666 35, as damages for his alleged violation of a verbal contract to supply the defendant with all necessary barrels for the molasses crop of the year 1882, at the stipulated price of $1 65 per barrel.

Plaintiff appeals from a judgment in favor of defendant for the full amount of his reconventional demand, subject to a credit in the sum claimed on open account by plaintiff.

The contention involves three points:

1. The existence of the contract alleged by defendant;

2. The necessity of putting plaintiff in default on the alleged breach of his contract, as a prerequisite condition of recovering damages therefor;

3. The measure of damages.

Some complaint is made by plaintiff as to the mode adopted by the judge of disposing of his claim, which is recognized only as a credit or offset against the reconventional demand, and was not put in the shape of an executory judgment.    But with such questions we can have no concern, for the very plain reason that his claim is not equal to the amount of the lower limit of our jurisdiction.

Our investigation is of necessity restricted to the issues growing out of the reconventional demand.

I.

Defendant's theory on the contract is that early in the year, in the month of March, plaintiff agreed to furnish him with all the molasses barrels which he would need for the crop of that year, 1882, at the price of $1 65 per barrel.

That by reason of a sudden and great rise on the market in the price of such barrels, plaintiff fraudulently broke his contract; and after furnishing him 200 barrels he ceased to deliver any more, causing to the defendant by his breach of contract the damages which the latter claims, and which he classes under four different heads:

1. For the purchase of four cisterns, and for the costs of putting them in position at the sugar-house...............$ 650 00
2. For the costs of reboiling his molasses.................... 500 00
3. For the difference between the cost price of necessary barrels and the contract price of the same.................. 1016 35
4. For the loss caused by the fermentation and the consequent reboiling of 7000 gallons of molasses, at the rate of 5 cents per gallon.......................................... 3500 00

The existence of the contract is sworn to with great assurance by the defendant, and is denied with equal firmness by plaintiff. But the preponderance of the evidence is in favor of the existence of the contract as alleged by the defendant, whose testimony is strongly corroborated by several other witnesses as well as by the probabilities and the equities of the case.

It would serve no useful purpose to give in detail the analysis which we have made of the testimony in the record, or to enumerate the circumstances which have contributed to the conclusions which have been impressed on our minds on this point.

We agree with the district judge in holding that the contract was proved, and that it was broken by plaintiff through a motive of interest growing out of the rise in the market for barrels, which in that season are shown to have risen from $1 65 to $3 75 per barrel.

Under that conclusion, we are warranted by law (C. C. art. 1934, No. 2) to hold him responsible for all the damages which can be attributed or traced to his breach of the contract and which can be proved with legal certainty.

But he contends that defendant has failed to allege and to prove that he (plaintiff) had been put in default; and that such proceeding is indispensable to the right of recovering damages in this case, wherein the alleged breach of the contract is passive and not active.

This is the substance of the second point of contention.

## II.

This point does not appear to have been urged in the lower court; at least, it forms no part of the pleadings, and no objection was made on that ground to the introduction of evidence on the subject of damages. With the exception of the plea of prescription of one year, plaintiff filed no plea to the demand in reconvention, and therefore the question of the necessity of putting in default comes up seriously on appeal only. It is apparent that the alleged violation of the contract is passive, and it is undisputed that, under the general rules of law,

putting the debtor *in mora* is an indispensable prerequisite to the recovery of damages.

But from the very nature of the rule, jurisprudence has deduced several unavoidable and important exceptions.

"The object of the putting in default is to secure the creditor his right to demand damages or a dissolution of the contract, so that the debtor can no longer defeat this right, by executing or offering to execute the agreement." Moreau vs. Chauvin, 8 Rob. 161; Pratt vs. Craft, 20 Ann. 291.

It follows, therefore, that the rule does not apply to the case of a party who absolutely denies the existence of the contract, as it is not probable that he would in such a case offer to execute a contract which he entirely ignores.

Hence it has frequently been held by this Court that in such cases the putting in default was not necessary. New Orleans and Nashville R. R. Co. vs. Gauch, 18 La. 510; Hivert vs. Lacaze, 3 R. 357; Abels vs. Glover, 15 Ann. 247.

It appears from the record in this case, that in November, 1882, when Fleitas saw that Beck had ceased to supply him with barrels he called in person on the latter and inquired into the reason of his conduct, whereupon Beck answered that he had made no contract with him. That statement, his subsequent conduct and his failure to plead that defence in answer to the reconventional demand must be construed as a waiver of the formality of putting in default.

These considerations open the way to the discussion of the third element of contention in the case.

### III.

It is elementary that the proof of damages must be as direct and positive in a reconventional demand as in a direct suit.

Guided by this rule, we leave the record with the conviction that the evidence on this point is vague, general, and insufficient on all the elements of damages, save two:

1. The record shows to our satisfaction that the failure of plaintiff to supply the defendant with necessary barrels according to the contract, necessitates the purchase of four cisterns at the price of $125 each, and that these cisterns were useless to the defendant for any other purpose; hence that item must be allowed; but on the question of the costs of foundations for the same, the testimony is too vague to support a judgment therefor. The mere assertion of defendant, in his testimony, that these foundations had cost him over $150, without any

details, is not sufficient. When asked on cross-examination to state the proportion of the cost of materials and of labor, his answer was that he could not tell. It was incumbent on him to be informed thereon.

2. We are satisfied that the fermentation of the molasses, and the necessity of reboiling the same were the immediate results of the want of necessary barrels, to be traced to the breach of the contract by the plaintiff, and that the operation cost fully five hundred dollars. Defendant was not called for details on this item, and his statement is uncontradicted; it is corroborated by the testimony of two other witnesses. We shall therefore allow it.

3. In his testimony in chief, defendant states that the purchase of 1227 barrels which he needed for the packing of his molasses, had cost him $3090.40, and that the same barrels at the contract price would have cost only $2024.55, hence he claims the difference $1016.85, as legitimate damages under this head.

But on cross-examination he was naturally asked to state the price at which he bought the barrels, at what time, and from whom. His answer was from various parties, at different times, and at various prices, some at two dollars, others at three, and others at three dollars and seventy-five cents, ending with the statement that he could not give these details without referring to the books or to the vouchers of his commission merchants. It is too plain for argument that it was his duty to have produced those vouchers; the necessary evidence was manifestly within his reach and its absence must recoil against him.

## IV.

The same reasoning applies with even greater force to the fourth and last item of damages which amounts *in globo* to $3500.

In his petition the defendant attributes that loss to the shrinkage in value of his molasses, owing to fermentation and reboiling. On trial he attempted to show that the loss resulted from that circumstance, and also from the loss by leaking and overflowing of the fermenting molasses out of the cisterns and iron tanks in which it had been temporarily stored.

He says that he lost from fourteen to twenty thousand gallons by the latter cause, and that 5 cents per gallon on 70,000 gallons would cover the loss from both causes.

He offered no evidence to show the fluctuation of the market, the price of any one lot of the 1227 barrels of molasses which had fermented and had been reboiled, or any evidence to show that, at the

same time, molasses which had not fermented and had been reboiled commanded a higher price on the market.

Of course we discard all testimony on the subject of loss by leakage as that element did not figure in the pleading. It may be that the shrinkage in value might cover the amount claimed. But it stands to reason that, in the very nature of things, proof of such loss was exclusively within the reach of the party claiming the damages; and it follows that all the testimony which the record contains on that subject amounts to nothing more than opinions and conjectures.

It results from what precedes that we disagree with the district judge in his conclusions on the three last items of damage; which should be non-suited.

The plea of prescription of one year seems to be abandoned on appeal. It has no merit whatever; the demand for damages being "en contractu" and not ex delicto. Our attention is called to two bills of exception reserved by plaintiff, but under our views of the case, they are stripped of all practical importance. We do not think that defendant is entitled to interests on his reconventional demand. He did not pray for interests and we shall allow none.

It is therefore ordered and decreed that the judgment appealed from be amended by reducing the amount allowed to defendant Fleitas on his reconventional demand, from $5666.35, with interest from judicial demand, to one thousand dollars, with interest from judgment. It is now ordered that the balance of defendant's claim be rejected as in case of non suit, and that as thus amended said judgment be affirmed, defendant and appellee paying costs of appeal.