244 So.2d 275 (1971)
BENEFICIAL FINANCE CO. OF NEW ORLEANS
v.
Shalen S. BIENEMY and Geraldine Bienemy.
No. 4146.
Court of Appeal of Louisiana, Fourth Circuit.
February 8, 1971.
Dissenting Opinion February 16, 1971.
*276 Plauche F. Villere, Jr., New Orleans, for Beneficial Finance Co. of New Orleans, plaintiff-appellee.
Joseph Meyer, Jr., New Orleans, for Shalin S. Bienemy and Geraldine Bienemy, defendants and third party plaintiffs-appellees.
Grisbaum & Kleppner, Ferdinand J. Kleppner, Metairie, for D. Daniel Bragg, third party defendant-appellant, and Jeff Collette, third party defendant-appellee.
Before REDMANN, STOULIG and BOUTALL, JJ.
STOULIG, Judge.
The Beneficial Finance Co. of New Orleans filed suit against Shalin S. Bienemy *277 and his wife, Geraldine, to enforce the collection of the balance due of $294.45 on a promissory note, in the principal sum of $300, executed by the defendants and dated October 2, 1968. The note was made pursuant to the Small Loan Act and was secured by a chattel mortgage on a 1961 Chrysler sedan.
In their responsive pleadings the defendants admitted signing the note and chattel mortgage. They acknowledged the balance due as being correct, but urged in bar of plaintiff's right to recover that it was not a holder in due course because of a preexisting legal relationship, express or implied, between the finance company and the vendors of the automobile. More specifically, the defendants contend they were induced by the sellers to borrow the remainder of the purchase price from the plaintiff and were actually escorted to the loan office for this purpose. In consideration of procuring business for the plaintiff, the vendors were paid a 5% commission. As such, it is urged the sellers were acting as agents for the loan company, and their fraudulent conduct and bad faith involved in the sale of the car is imputable to their principal, thereby destroying the presumption of plaintiff's good faith and rendering the obligation it held vulnerable to attacks of fraud or the want or failure of consideration.
Defendants filed third party proceedings against D. Daniel Bragg, Jeff Collette and Roger M. Duckworth, who allegedly were individually doing business under the corporate name of Used Car Brokers, Inc. The basis of the third party action is a rescission of the sale for redhibitory defects. It seeks not only a reimbursement for whatever amount the third party plaintiffs are cast in judgment in the original proceedings, but, in addition, the return of the purchase price, interest, insurance, and $3,000 in damages.
Exceptions were lodged against the jurisdiction of the city court to entertain the third party demand, since it exceeded the jurisdictional limit of $1,000. An attack was leveled at the use of the third party procedure to recover damages in excess of the amount for which the third party plaintiff is cast in the original proceedings. And finally, exceptions of no cause or right of action were filed predicated on the failure of the third party petition to disclose a tender of the return of the automobile to the vendors, a mandatory requirement of an action in redhibition.
The uncontradicted evidence reflects that the defendant Shalin S. Bienemy, on September 18, 1968, agreed to purchase a 1961 Chrysler sedan from Used Car Brokers, Inc., for $600. All of the negotiations leading up to and including the sale were with D. Daniel Bragg and Jeff Collette, the owner and salesman, respectively, of the above-named used automobile dealership.
Having no funds with which to pay the purchase price, Mr. Bienemy was taken by Mr. Collette to the Prudent Credit Corporation, where a loan of $300 was made. Lacking the balance of the sales price, the physical possession of the car was retained by the sellers. On October 2, 1968, upon the suggestion of the vendor, the defendant was driven to the plaintiff's office where he applied for a $300 loan to cover the balance of the sales price. In connection with the loan transaction, the defendants executed an installment note payable to the order of the finance company, which was secured by a chattel mortgage on the automobile they had just acquired.
The written bill of sale, signed by all parties, contained the following provision:
"ALL CARS ARE SOLD AS IS WHERE IS, * * * WITH THE EXCEPTION OF: (Internal) Motor, Transmission, which is Guaranteed for Twenty Four (24) Months from Purchase, on a 50/50 Basis, with all work to be done in our shop."
It is at this point in the sequence of events that contradictions in the testimony arise. Mr. Bienemy stated when they returned *278 to the lot he was given possession of the car, and in starting the motor noticed it was missing. Upon being assured by the vendor that a minor motor tune-up would remedy this condition, he drove it from the lot. While on his way home, the motor became overheated requiring him to stop at a service station for assistance. He immediately notified the seller of his difficulties, and was instructed to return the car so it could be checked by a mechanic. This he did some two days later.
According to the defendant, he left the car with the seller for approximately one month, during which time he heard nothing further about his automobile. Nor was his wife able to make contact with either Collette or Bragg by telephone. In the meantime the seller had moved to a new location, leaving the automobile at his former place of business. Later, purely by chance, he saw Collette driving an automobile, and followed him to Bragg's new location. It was then that he was informed it would cost $190 to repair his car. Bienemy proceeded to move the automobile to his home. Later, Collette suggested to Bienemy that he have the car repaired at Bragg's expense; however, when Bragg was notified of the estimated cost of repairs, he berated the purchaser for moving the car without his permission. No further discussions were had pertaining to the repairs, and the car is presently located at the defendants' home with its motor removed.
As opposed to the foregoing, the third party defendant submitted that the car was in good operating condition when delivered to the purchaser. He maintains that some three weeks later Bienemy telephoned him about the motor's missing and overheating. He instructed him to return the car so that it could be examined by their mechanic. This was done promptly.
The mechanic determined that $190 would be required to repair the engine which had a blown head gasket and also required valve work. Mr. Bienemy was unable to make the deposit of $50 required by the mechanic, and left his automobile on the lot which adjoined the repair shop. How and when the owner regained possession of his car is not known by any of the third party defendants.
The trial court rendered judgment for $294.45 plus interest, attorney's fees and cost in favor of the plaintiff in the principal action and for the third party plaintiffs in the sum of $957.96 and costs against D. Daniel Bragg, only. The third party demand against the remaining defendants Jeff Collette and Roger M. Duckworth was dismissed for the lack of evidence tending to establish that either of them had any proprietary interest in the business. Appeals were filed on behalf of the defendants Mr. and Mrs. Shalin S. Bienemy and the third party defendant D. Daniel Bragg.
Defendant's contention, that the plaintiff is not a holder in due course because of a preexisting principal-agent relationship between the finance company and his vendor, is not germane to the issues presented in the original demand. Admittedly plaintiff is not a holder in due course as defined by LSA-R.S. 7:52, but, in fact, is the payee named in the instrument which was negotiated to it by the maker.
Under the definition expressed in LSA-R.S. 7:52, a holder in due course is one who accepts an instrument from a prior holder without actual knowledge or knowledge of such facts as would make the act of accepting the instrument amount to bad faith. In the instant matter the plaintiff accepted the instrument from the maker and not a holder; therefore, plaintiff is the initial holder, having been the designated payee in the obligation.
The instrument was executed by the defendant as evidence of his indebtedness to the plaintiff for a $300 cash loan, the proceeds of which were paid to the maker. It is not a vendor's lien note representing a part of the credit portion of the sales price negotiated to the used car dealer, who subsequently *279 transferred it to the present holder.
The note is a direct obligation of Mr. Bienemy payable to plaintiff finance company as payee. As such it is a separate and distinct legal transaction from the sale of the car. Therefore, the bad faith or fraudulent conduct practiced by the vendor, if any, in the sale of the car to the defendant, has no bearing whatever on plaintiff's loan to Mr. Bienemy, nor can it affect the rights of the payee under the instrument. Only these equities and defenses arising in connection with the confection of the instrument and the consideration for its negotiation can be interposed by the maker in bar of the plaintiff's right to recover thereon. None was presented and the plaintiff is therefore entitled to judgment for the unpaid balance due on the note, together with interest, cost and attorney's fees, in accordance with the tenor of the instrument.
Turning to the issue of whether an action in redhibition may be the basis of a third party demand, we find that this question has been answered affirmatively in a thoroughly and well-reasoned opinion by Justice Tate in Automotive Finance Company v. Daigle, 80 So.2d 579 (La.App. 1st Cir. 1955). See, also, Motors Securities Company v. Hines, 85 So.2d 321 (La.App. 2d Cir. 1956).
It has been submitted that the City Courts for the City of New Orleans do not have jurisdiction to entertain a third party demand in excess of $1,000 due to the fact that LSA-C.C.P. art. 4835, which permits reconventional demands and interventions for amounts greater than $1,000, makes no reference to third party actions. Thus, it is argued that as the third party plaintiff's demand was in excess of $3,000, the court was without jurisdiction to entertain it, and for this reason the judgment should be set aside.
Article 7 of Section 91 of the Constitution, after prescribing the jurisdiction of the First City Court of New Orleans, further empowered it to exercise jurisdiction over incidental demands filed therein and connected with the principal demand "irrespective of amount."
At the time of the adoption of this constitutional provision in 1958 the recognized incidental demands were intervention, reconvention and the third party proceedings. The first of these two were contained in the Code of Practice, and the third party practice was authorized by Act 433 of 1954. Subsequently, in 1960, the Code of Civil Procedure in Article 1031 merely reiterated and reaffirmed the three types of incidental demands in existence when Section 91 of Article 7 became effective.
The contention of third party defendants that the omission of the third party demand from LSA-C.C.P. art. 4835 altered, modified and restricted the authority of the city court to entertain this category of incidental demand is without merit.
However, a third party demand, by the very nature of its definition expressed in LSA-C.C.P. art. 1111, is restricted or limited to the amount of the judgment under the original demand, or any part thereof. It follows that if the original demand filed in the city court cannot be for an amount greater than $1,000, then, of necessity, a third party pleading for total or partial reimbursement of original judgment could not exceed this amount. Thus, the third party plaintiff's action for $3,882.96 was excessive, the main demand being for $294.45. However, the seeking of damages in excess of the original demand does not destroy the validity of the third party proceeding or result in a forfeiture of the purchaser's right to assert it. Rather, any award granted would be, of necessity, limited to all or part of the judgment rendered in the principal demand.
In this matter, judgment for $294.45 together with interest, attorney's fees and costs was rendered in the main demand. It therefore follows that the maximum *280 judgment in the third party action cannot be for a greater amount.
We turn now to the specific contention which is the basis of third party plaintiff's action against defendant, Used Car Brokers, Inc., namely, that the vehicle in question contained redhibitory defects which warrant a rescission of the sale in question.
The article relied upon is LSA-C.C. art. 2520, which reads as follows:

"Redhibition is the avoidance of a sale on account of some vice or defect in the thing sold, which renders it either absolutely useless, or its use so inconvenient and imperfect, that it must be supposed that the buyer would not have purchased it, had he known of the vice."
Shalin S. Bienemy maintains that the 1961 Chrysler he purchased from Used Car Brokers contained a cracked block at the time of the sale, thus rendering the vehicle useless for the purpose for which it was intended.
There is much conflict in the testimony contained in the record as to the exact date on which Used Car Brokers was notified of the malfunction in the automobile; nevertheless, we have, after a careful analysis of the testimony and evidence, little difficulty in concluding that third party plaintiff has succeeded in carrying the burden of proof that the vehicle did, indeed, contain the defect complained of at the time it was sold, and that Used Car Brokers was notified of this fact shortly after the Bienemys took possession.
Furthermore, it is equally clear that the cracked block complained of in this case is a redhibitory vice within the meaning of the above-quoted codal provision. There can be little doubt that such a defect, which goes to the very core of the inner workings of the automobile, renders it useless or so inconvenient and imperfect that it must be supposed that the buyer would not have purchased it had be known of the vice. LSA-C.C. art. 2520, supra. See Savoie v. Snell, 213 La. 823, 35 So.2d 745 (1948); Leson Chevrolet Company v. Barbier, 173 So.2d 50 (La.App. 4th Cir. 1965).
Additionally, there can be no doubt that the defect complained of was not apparent upon simple inspection. This was made clear from the testimony in the record indicating that the cracked condition of the block was in such a place that it was not observable in a simple inspection of the automobile. Nor was the engine malfunction sufficient to cause the buyer to investigate for a cracked block.
This court is not persuaded by the argument that the proviso in the bill of sale the automobile was sold "as iswhere is," with the exception that the (internal) motor and transmission were guaranteed on a 50-50 repair agreement should any work become necessary within 24 monthsso altered, modified, and restricted the vendor's warranty, that the third party plaintiff was not entitled to any relief, except 50% of the cost to repair the designated components.
In discussing the term "as is" in a contract of sale, the court in the case of United Motor Car Co. v. Drumm, 3 La.App. 741 (1926), stated at page 743:
"The use of these words in a contract of sale means, we take it, `as it is,' and as applied to the automobile sold by plaintiff it was purchased `as it was.' We would not wish to be understood as holding that the presence of these words in a contract of sale would amount to a waiver of all warranty by the purchaser. But, certainly, the phrase modifies the warranty implied. If, however, the thing sold, the automobile in this case is not fit for the use for which it was intended; for example, if it would not run, the fact that it was sold `as is' would not prevent a rescission of the sale for one of the characteristics of an automobile, as its name suggests, is the ability to run on its own power. * * *" *281 Thus, the fact that the automobile purchased by Bienemy was sold "as is" does not relieve the seller of all warranty, and should not be used to permit him to escape responsibility for the sale of a vehicle with a cracked block.
Nor should the 50-50 repair arrangement be held to deny third party plaintiff any relief other than that which is based on an equal contribution of repair costs. While it is certainly correct, as is contended, that the parties may, by mutual agreement, alter, modify, or even waive any implied warranty of fitness, we do not find that the language used in the bill of sale with regard to the repairs was intended by the parties to encompass such critical and disabling defects in existence at the time of the transaction, and which, unless corrected, would render the thing useless for the purpose for which it was purchased. To be sure, both parties were obviously aware that a 7-year-old automobile is far from a perfect vehicle and that some repairs to it are probable. Accordingly, with regard to repair of the internal motor and transmissionboth major componentsthe parties agreed to split the costs should such work become necessary within a 24-month period. But clearly, the buyer was not contemplating a vehicle in which parts of these components were already malfunctioning. It was obvious that he hoped no defects would manifest themselves which would require his contribution of 50% of the costs under the warranty agreement. The cracked block is sufficient to sustain an action in redhibition.
We must now address ourselves to the issue of whether or not there was a tender of the vehicle by the Bienemys to the used car dealer from whom he had purchased the automobile.
Louisiana jurisprudence is well settled that a prerequisite to an action in redhibition is an offer by the buyer, after discovery of the defect, to return the object of the sale and place the parties in the position that they held prior to the transaction. See Byrne v. Ortte, 33 So.2d 209 (La.App. Orl.1948); Womack v. Lafayette Furniture Co., 50 So.2d 843 (La.App.Or.1951), and the cases cited therein. Therefore, in order for third party plaintiff to be successful in this action he must show that such a tender was made within a reasonable time after discovery of the defect in the vehicle.
A careful search of the record by the court fails to reveal any evidence which supports the allegation that such a tender was made. The most that can be said is that third party defendants were notified of the malfunction of the automobile, after which they offered to repair the vehicle, paying half of the cost of the necessary work. But at no time did Bienemy tender the automobile back to Used Car Brokers in an effort to cancel the transaction and return the parties to their position before the sale. Rather, after leaving the vehicle at Used Car Brokers for over a month, he returned to get it, and proceeded to have it towed back to his yard where it remained up until the time of trial. Clearly, this was not the action of one who disclaimed ownership and called for a rescission of the sale.
However, such a conclusion does not foreclose a reduction by this court in the price of the vehicle. LSA-C.C. art. 2543 states:
"The purchaser who has contented himself with demanding a reduction of the price, can not afterwards maintain the redhibitory action.
"But in a redhibitory suit, the judge may decree merely a reduction of the price."
See also Leson Chevrolet Company v. Barbier, supra, in which the court, citing case law authority, stated that the burden of establishing the amount of reduction to which he is entitled lies with the buyer.
The evidence in the instant case preponderates in favor of the conclusion that the estimate of $405 to repair the defects in the *282 motor more accurately reflects the costs necessary to place the vehicle in good operating condition suitable for the purpose for which it was purchased. Accordingly, the third party judgment should be reformed to correspond with the judgment rendered on the principal demand, but not to exceed $405 together with legal interest thereon from the date of judicial demand until paid.
For the reasons assigned, therefore, the judgment appealed from in the instant suit is amended by decreasing the award of damages in favor of third party plaintiffs, Shalin S. Bienemy and Geraldine Bienemy, against Used Car Brokers, Inc., to the full sum of $294.45 with 3½% per month interest on the first $150 and 2½% per month interest on the balance from January 20, 1968, until October 2, 1971, and then 8% per annum interest until paid together with 20% attorney's fees on the principal and interest but not to exceed the sum of $405 plus legal interest from date of judicial demand. Costs are to be borne by third party plaintiffs and third party defendants. In all other respects and as thus amended, the judgment appealed from is affirmed.
Amended and affirmed.
REDMANN, Judge (dissenting in part).
Preliminarily I note two questions as to jurisdiction: whether we have jurisdiction as to the main demand, and whether the trial court had jurisdiction of the third party demand.
The question of our jurisdiction presents itself because defendant's devolutive appeal bond was filed more than two months after the City Court judgment. C.C.P. art. 5002 required the order of appeal, suspensive or devolutive, to be sought within ten days from expiration of delay for applying for new trial (where no such application is made), but (prior to its 1970 amendment by Act 107) expressly required only the suspensive appeal bond to be furnished within that period. It is somewhat anomalous that an order for devolutive appeal would have to be sought within a ten-day period, yet the bond not have to be furnished within that period. (If it were required, but not timely furnished, we would have no jurisdiction; C.C.P. art. 2088.) However, C.C.P. art. 5001 provides that, except as otherwise provided by art. 5002, all rules applicable to district court proceedings apply in City Court cases involving over $100, and it therefore appears that (prior to the 1970 amendment of art. 5002) a devolutive appeal bond could be furnished within the 90-day period of art. 2087, even though the order for devolutive appeal had to be applied for within the ten-day period of art. 5002. Thus defendant's bond was timely and we have jurisdiction of the appeal from the judgment against him on the main demand.
The jurisdictional question respecting the third party demand is whether the First City Court had jurisdiction to entertain it. Third-party defendant excepted that the amount (about $4,000) exceeded that court's $1,000 jurisdictional limit. He argues that a third party demand is not within "reconventional demands and interventions" allowed by C.C.P. art. 4835 to be decided irrespective of amount. But Const. art. 7, § 91, subd. A, after stating the usual $1,000 limit of this city court, provides "* * * It has jurisdiction over incidental demands filed therein and necessarily connected with or growing out of the principal demand, irrespective of the amount in dispute or the value of the property. * * *" This language results from a 1958 amendment; previously the wording was "reconventional demands, interventions and third oppositions" instead of "incidental demands". It appears to me that the advent of broad third party practice under La. Acts 1954, No. 433, is one reason the constitutional wording was changed, precisely to allow a connected third party demand regardless of its amount. I conclude the First City Court did have jurisdiction.
*283 In a sense a related question is whether a third party demand may ever exceed the principal demand. The majority here says it cannot. If it cannot, then from one point of view the jurisdiction problem disappears: no main demand can exceed $1,000 and therefore no third party demand (if limited to the main demand) could ever exceed $1,000. Any purported third party demand in excess of the main demand would presumably be dismissed at least as to the excess, as not presentable by third party demand.
(A difficulty would arise in a case like the present one, where on a main demand for $300 the third party demand is for rescission of a $600 sale. If the $300 main demand limits the third party recovery to only $300 of the price, as the majority says, then certainly the court could not order return of the $600 car. And, if return couldn't even be ordered, the majority's question of tender of return seems immaterial.)
In fact, a third party demand in excess of the principal demand was recently allowed by this court (constituted by a different panel of judges), in Mid-States Ins. Co. v. Firemen's Fund Ins. Co., 240 So.2d 908 (La.App.1970), cert. denied 257 La. 608, 243 So.2d 274. There, one party to an automobile accident was sued by another and impleaded a third person, first only for indemnity. But by later amendment the third-party demand was increased to include the original defendant's own damages. It appears to me appropriate that the entire litigation should be included in one suit, since the common questions of fact and law ought to be at issue but once.
The language of C.C.P. art. 1111 is only that a defendant by third-party petition "may bring in any person * * * who is or may be liable to him for all or part of the principal demand." If the nature of the third-party demand is such that its resolution will determine all the facts and law pertinent to the entire dispute between third-party plaintiff and third-party defendant, sound judicial administration would authorize the adjudication of the entire dispute, if the third-party defendant is "brought in" at all; and the wording of C.C.P. art. 1111 does not prohibit this result.

Main Demand
Plaintiff sues on an obligation given in connection with the purchase of a car, from a person who was, in addition to being the seller, an agent of the plaintiff lender.
Plaintiff paid the seller a commission on this loan, as it had on loans for "10 or 15 cars a month, you know, 8 or 9 cars a month at least" during the previous four or five years.
Still, the seller did not sell for the lender; his function as agent of the lender was to procure borrowers. But it is true that this particular agent's method of procuring borrowers was the selling of cars (not, however, solely for the loan commission).
These circumstances trouble me in respect to the lender's entitlement to recover where its agent (but not exclusively as such) has sold a redhibitorily defective car, which was the buyer-borrower's ultimate principal motive for undertaking the obligation to the lender.
(Yet, if a loan is made as an entirely separated contract, even though the lender knows the purpose is to buy a car, the mere knowledge of ultimate purpose cannot defeat the claim of a lender for return of money loaned in accordance with the loan contract.)
It seems to me that the real question in a suit of this kind to enforce an obligation remains whether the cause for which the obligation was given makes the obligation enforceable, or whether for some defect of cause the obligation is unenforceable.
In the case of a note issued to the seller and by him negotiated to a third party, if the third party is not a holder in due course *284 the defense of redhibitory defects would be good against him. But the theory is that the obligation sued on had the car as its cause, and since the car is so defective the buyer cannot be obliged to pay the credit portion of the price. There is no cause, no consideration, for the buyer's note: he didn't get what he bargained for.
Here (unless the seller's commission on the loan affects the theory) the note was not issued for the car, but for the lender's discharge of the buyer's obligation to pay the balance of the price of the car, the sale having been perfected by agreement several days earlier. (The lender shows a paper transaction, a check issued by lender to buyer and, in effect, seller jointly, and endorsed by both but deposited into the lender's own account.) While it might technically be argued that the discharged obligation itself had no cause, the discharging of the obligation did cost the lender $294.
Thus the defendant did get from the lender what he bargained for in exchange for his note. So whatever we might say about the payment to the seller of a commission on the loan, the lender is not subject to the typical redhibition defense, which is lack of cause or consideration.
There is a substantial similarity between the seller-payee case, where the lender buys the seller's claim against the purchaser, and our case, where the lender "buys" the purchaser from the seller (paying him a commission) in order to obtain the purchaser's note in exchange for which the lender pays the seller's claim against the purchaser.
But there is also a substantial dissimilarity between the two situations, as noted above.
Unable to convert my doubt about the circumstances into an express and reasonable differentiation from the simple promise-for-good-cause case, I agree with the majority that the judgment for plaintiff on the main demand must be affirmed.

Third Party Demand
In a case where the seller is payee on the note which has been negotiated to a third person, the purchaser's real defense (not available against a holder in due course) is lack of cause or consideration. Thus, as between seller and purchaser, the purchaser is not obliged to pay the note. But since he must pay the holder in due course, he may implead as a third-party defendant the seller, "who is both his warrantor (on the implied personal warranty in the sale of the automobile) and who is also liable to the present defendant [purchaser] for any judgment recovered against the latter by the present plaintiff [holder of the note] that is, of course, if the allegations of his petition against the third-party defendant as to the defective nature of the automobile are true." Automotive Fin. Co. v. Daigle, 80 So.2d 579, 582 (La.App. 1955); emphasis and bracketed words added. See also the decree in Harris v. Halligan, 23 So.2d 332, 335 (La.App.1945), reversed on other grounds on rehearing, 25 So.2d 111.
It appears to me that the fundamental reasoning in such a case is that the seller ought to idemnify the purchaser against liability for the price, including, where the credit portion of the price is represented by a note, its accessory obligations such as interest and attorney's fees.
And it appears to me that the case before us presents a novel question for policy determination. The form of the transaction is one of a sale for cash loaned by a third party. But in substance, the "lender" is not completely a third party as to the seller because the seller is also the lender's agent. The policy question is whether such a seller ought to be allowed to pose the lender as a third party, thus limiting the seller's liability to a return of the price only, and not also the accessory obligations the note entails.
In my judgment, the preferable policy decision is to deny to a seller who makes himself a lender's agent such a limitation of his liability. Such a seller cannot truly *285 say he limits his sales to cash sales. This is the form of his sales, but in substance he participates in, and gets part of the profit from, financing his own sales. Such a seller-financer ought, in my opinion, to be liable in indemnity to the purchaser for the amount of the note and its accessory obligations, on the theory that the note under such circumstances is assimilable to a sellerpayee note, as between seller and purchaser. (Obviously a buyer could not sit silent, letting interest run, without even notifying the seller. But here the seller knew of the uselessness of the car a few days after the sale, yet did nothing except offer to repair at half price.)
Thus, unless lack of tender prohibits complete redhibition, the purchaser should have judgment over for the full amount of the lender's judgment, plus the other $300 paid for the car in cash. (No commission to seller by the lender of that cash was shown.)
Unless we proceed on some similar indemnity theory, I have difficulty in admitting a third-party demand. If the loan and note transaction were completely isolated in fact from the sale, even though the proceeds were used to buy the car, I doubt a third-party demand would lie, since the buyer sued on the note probably could not assert the seller "is his warrantor, or * * * is or may be liable to him for all or part of the principal demand," C.C.P. art. 1111. See Equitable Life Assur. Soc. of U. S. v. Boudreaux, 225 So.2d 75 (La. App. 1969).

Tender
I disagree with the majority on the question of tender of the return of the defective thing, which is only a question of amicable demand; Lewis v. Morgan, 14 La.Ann. 401 (1859). The necessity for an ultimate actual return (in ordinary cases) is a matter of substance: unless the purchaser can return the thing, he cannot have the rescission of the sale decreed; Harris v. Halligan, supra, on rehearing.
But the mere absence of amicable demand must be pleaded in the dilatory exception or it is waived; C.C.P. art. 926. Even under prior law the lack of tender of the defective thing had to be "specially pleaded." Woodward-Wight & Co. v. Engel Land & Lbr. Co., 123 La. 1093, 49 So. 719 (1909).
Thus the question of tender is not an issue in this lawsuit, since third-party defendant never raised this objection by exception.
Furthermore, third-party defendant's pleading makes it plain it would have refused a tender, since it insisted before suit that its only liability was to have the car repaired with each party paying half of the cost. Where the action of the seller indicates the tender would be fruitless, it need not be made; see Lewis v. Morgan, supra; Hivert v. Lacaze, 3 Rob. 357 (La. 1842).
And finally, as to tender, it is not necessary where the buyer seeks to rescind the sale as a plaintiff in reconvention; Mohana v. Woodall, 69 So.2d 163 (La.App.1953). In my opinion it ought equally not be required where the buyer did not initiate the litigation but himself was sued and third-partied the seller.
Thus the only substantive question is whether the seller is still in a position to return the car. The fact that the engine has been removed is no obstacle, since there is no suggestion it cannot be replaced with the same ease with which it was removed; and it is worthless except as scrap anyway.
Thus I conclude the proper judgment on the third party demand is one rescinding the sale, ordering the return of the car to seller, and granting the purchaser return of the full price, as in substance paid, by granting judgment over for the amount of plaintiff's recovery plus judgment for the other $300 of the price.